IRENE K. YESOWITCH (State Bar No. 111575)
iyesowitch@cozen.com
ALICIA M. GURRIES (State Bar No. 210225)
agurries@cozen.com
**COZEN O'CONNOR**
575 Market Street, Suite 2200
San Francisco, CA 94105
Tel: (415) 644-0914; Fax: (415) 644-0978

Attorneys for Plaintiff
EVANSTON INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA- SAN FRANCISCO

| | |
|---|---|
| EVANSTON INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.<br><br>Defendant. | CASE NO.<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff, EVANSTON INSURANCE COMPANY (hereafter "Plaintiff" or "Evanston") brings this action for declaratory judgment against defendant, UBER TECHNOLOGIES, INC. (hereafter "Defendant" or "Uber") as follows:

### INTRODUCTION

1. This action seeks a declaration that Evanston owes no coverage obligations under an occurrence excess liability policy with respect to Uber's liability in the matter entitled *Liu v. Uber Technologies, Inc.*, San Francisco County Superior Court Case No. CGC 14 536979 (hereinafter the "Underlying Action") concerning an automobile accident.

1

COMPLAINT FOR DECLARATORY RELIEF

## THE PARTIES

2. Plaintiff EVANSTON INSURANCE COMPANY is a corporation in the insurance business which has its principle place of business in Illinois. EVANSTON INSURANCE COMPANY is identified on the List of Approved Surplus Lines Insurers in California.

3. Plaintiff is informed, believes and thereon alleges that defendant UBER TECHNOLOGIES ("Defendant") is a Delaware corporation with its principle place of business located at 1455 Market Street, 4th Floor, San Francisco, California 94103.

## JURISDICTION AND VENUE

4. This is an action for declaratory judgment arising under 28 U.S.C. §§2201 and 2202 (the "Declaratory Judgment Act"), to determine an actual controversy between the parties, concerning the rights and obligations arising under a contract of insurance issued by Evanston to Uber in California.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000.00 exclusive of costs and interest, and the parties are citizens of different states.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391 as this case involves a claim for coverage under an excess liability policy issued to Uber within this District.

## THE UNDERLYING *LIU* LAWSUIT

7. On December 31, 2013 at 8:30 p.m., Huan Kang was walking to her home in San Francisco with her two children, Anthony Liu and Sofia Liu. As they were crossing Polk Street where it intersects Ellis Street, a car driven by Syed Muzzafar turned right from Ellis and struck Ms. Kang and her children. The collision allegedly killed Sofia Liu and caused physical and mental injuries to Ms. Kang, Anthony Liu and Sofia Liu's father, Ang Jiang Liu. When the accident occurred, Mr. Muzzafar allegedly was using the Uber app and allegedly was Uber's Raiser LLC or Raiser-CA LLC's Agent, employee or partner.

///

///

8. On or about January 27, 2014, Mr. Liu, as an individual, as guardian ad litem for Anthony Liu and as successor-in-interest on behalf of Sofia Liu's estate, Anthony Liu and Ms. Kang, sued Uber, Raiser LLC, Raiser-CA, LLC and Mr. Muzzafar in the matter entitled *Liu v. Uber Technologies, Inc.*, San Francisco County Superior Court Case No. CGC 14 536979 (hereinafter the "Underlying Lawsuit"). A copy of the Underlying Lawsuit is attached hereto as Exhibit A.

9. Uber tendered its defense and indemnity in the Underlying Lawsuit to Evanston.

10. Evanston denies that it owes Uber any defense or indemnity obligation for the Underlying Lawsuit. A copy of Evanston's denial of Uber's tender is attached hereto as Exhibit B.

11. The Underlying Lawsuit has settled for an amount that has not been disclosed to Evanston. Uber has demanded payment for this unknown amount. A copy of the Request for Dismissal of the Underlying Lawsuit filed on August 24, 2015 is attached as Exhibit C.

**THE EVANSTON POLICY**

12. Evanston issued Occurrence Excess Liability policy number XONJ523313 for the period of April 19, 2013 to June 30, 2014 to Uber (hereinafter "Policy"). A copy of the Policy is attached hereto as Exhibit D.

13. The Evanston Policy is excess to Commercial General Liability policy number 536-15-39 between National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and Uber for the period April 19, 2013 to June 30, 2014 and Business Auto policy number 230-49-85 between National Union and Uber for the period April 19, 2013 to June 30, 2014. Copies of National Union's policies are attached as Exhibits E and F.

14. The National Union Commercial General Liability policy contains a $1 million each occurrence limit and a $2 million general aggregate. The National Union Business Auto policy contains a $1 million liability limit. The Evanston Policy is excess to and follows form to the National Union insurance policies except to the extent terms, definitions, conditions and exclusions of the Evanston Policy differ from the National Union policies.

///

15. The critical terms of the Evanston's Policy's insuring agreement relative to this Complaint are as follows:

> 1. The Company hereby agrees to pay on behalf of the Insured that portion of Ultimate Net Loss in excess of the limits of Underlying Insurance as shown in Item 4. of the Declarations, but only up to an amount not exceeding the Company's Limit of Liability as shown in Item 3. of the Declarations. Except for the Terms, Definitions, Conditions and Exclusions of this policy, the coverage provided by this policy shall follow the Insuring Agreements, Definitions, Conditions and Exclusions of the Controlling Underlying Insurance Policy as shown in Item 4. of the Declarations.
>
> 2. The inclusion or addition hereunder of more than one Insured shall not operate to increase the Company's Limit of Liability beyond that set forth in Item 3. of the Declarations. ….

….

16. The Evanston Policy contains the following definitions:

> 1. **Each Annual Period.**
>
>    The term "Each Annual Period" shall mean consecutive period of one year commencing from the inception date of this policy.
>
> 2. **Ultimate Net Loss.**
>
>    "Ultimate Net Loss" means the total amount of damages for which the insured is legally liable in payment of "bodily injury", "property damage", "personal injury", or "advertising injury." "Ultimate Net Loss" may be established by adjudication, arbitration, or a compromise settlement to which we have previously agreed in writing. "Ultimate Net Loss" shall be reduced by any recoveries … which have been paid or will be collected, but the amount of "ultimate net loss" shall not include any expenses incurred by an insured, by us, or by any "underlying insurer."
>
> 3. **Underlying Insurance.**
>
>    The term "Underlying Insurance" shall mean the policy or policies listed in Item 4. of the Declarations.

. . .

/ / /
/ / /

4
COMPLAINT FOR DECLARATORY RELIEF

17. The Evanston Policy contains the following exclusions:

> **It is agreed that the aggregate limits shown in Item 4. Schedule of Underlying Insurance, shall neither be reduced or exhausted by reason of any paid losses caused by, or arising out of the Exclusions listed below:**
>
> This policy shall not apply:
>
> . . . .
>
> 8. "Ultimate Net Loss" arising out of or in connection with punitive damages, exemplary damages, treble damages or any multiple of a compensatory award in whatever form assessed.
>
> . . .

18. The Evanston Policy contains an Auto Liability Limitation, which provides:

> This endorsement modifies insurance provided under the following:
>
> OCCURRENCE EXCESS LIABILITY POLICY
>
> In consideration of the premium charged, it is hereby understood and agreed that this policy shall not apply to "Ultimate Net Loss" for any loss, cost and/or expenses arising out of, resulting from, caused by, or in any way contributed to the ownership, maintenance, use or entrustment to others of any auto:
>
> 1. While away from premises you own, rent, or occupy; or
>
> 2. Owned by or rented or loaned to any insured.
>
> As used in this limitation, use includes operation and loading or unloading.
> However, this limitation endorsement shall not apply except to the extent that coverage is provided by a policy or policies shown in the Schedule of Underlying Insurance and then only to the extent that coverage is provided by such policy or policies.
>
> All other terms and conditions remain unchanged.
>
> . . .

19. The Evanston Policy's Designated Premises Limitation, which provides:

> This policy shall only apply to "Ultimate Net Loss" arising out of operations at the following designated premises only:
>
> Loc. #01 - 675 Massachusetts Avenue 10th, Cambridge, MA 02139
>
> Loc. #02 - 920 Santa Monica Blvd., Santa Monica, CA 90401
>
> Loc. #03 - 800 Market Street, 7th Floor, San Francisco, CA 94102
>
> Loc. #04 - 1712 N. Street NW, Suite 101, Washington, DC 20036
>
> Loc. #05 - 230 West Superior, Suite 200, Chicago, IL 60654
>
> Loc. #06 - 33 Nassau Ave., Suite 2, Brooklyn, NY 11222
>
> Loc. #07 - 1808 Bellevue Ave., Ste. 201, Seattle, WA 98122
>
> Loc. #08 - 405 Howard Street, 5th Floor, San Francisco, CA
>
> Loc. #09 - 1062 Delaware St., Denver, CO 80204
>
> Loc. #10 - 1650 Arch St., Ste. 1906, Philadelphia, PA
>
> Loc. #11 - 2919 Commerce Street, Dallas, TX
>
> Loc. #12 - 1729 21st Street NW, Washington, DC 20009
>
> All other terms and conditions remain unchanged.

. . .

### THE NATIONAL UNION COMMERCIAL GENERAL LIABILITY INSURANCE CONTRACT

20.  The critical terms of the National Union Commercial General Liability policy's Insuring agreement relative to this Complaint are as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply…

21.  The National Union Commercial General Liability policy contains the following Designated Ongoing Operations Exclusion:

/ / /

> This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others."
>
> The Schedule lists "all exposures and operations with Raiser."

22. The National Union Commercial General Liability policy excludes coverage for "bodily injury" or "personal injury" arising of the ownership, maintenance or use of any auto owned, operated by or rented to an insured:

> This insurance does not apply to:
>
> . . . .
>
> **g. Aircraft, Auto or Watercraft**
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured."

**THE NATIONAL UNION BUSINESS AUTOMOBILE POLICY**

23. The National Union Business Automobile policy limits coverage to certain "hired autos" and "non-owned autos" as follows:

> 8. Hired "Autos" Only
>
> Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your employees" partners (if you are a partnership), members (if you are a limited liability company) or members of their households.
>
> 9. Nonowned "Autos" Only
>
> Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes

7
COMPLAINT FOR DECLARATORY RELIEF

"autos" owned by your "employees," partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

24. The critical terms of the National Union Business Auto policy's insuring agreement relative to this Complaint are as follows:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

25. The National Union Business Auto policy's provides that "accident" "includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or property damage."

26. The National Union Business Auto policy's also provides that "Auto" means "[a] land motor vehicle …."

27. The National Union Business Auto policy's other insurance provision makes the National Union Business Auto policy is excess to insurance for non-owner vehicles:

> … For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. …

**THE APPLICATION AND ISSUANCE OF THE POLICY**

28. During the initial underwriting of the Evanston Policy, Newton Ribeiroat at Crump Insurance acting on behalf of Uber wrote to Dan Confalone at Markel – Excess & Umbrella Underwriting, the underwriter for Evanston (hereafter "Markel") on April 12, 2013 stating that "Uber is a Tech Company NOT a livery service". (Emphasis in the original.)

/ / /

/ / /

/ / /

8

COMPLAINT FOR DECLARATORY RELIEF

29. On April 15, 2015, Johann Hunter, Senior Underwriter with Markel, also had several communications with Matt Hahn from Crump Insurance, regarding the auto exposure that Uber was requesting that Markel bind. Specifically, Mr. Hahn confirmed that Uber was not seeking any coverage from Evanston for "ANY livery, taxi or limo operations whatsoever". (Emphasis in the original.)

30. On April 18, 2013, Mr. Hahn requested that Ms. Hunter bind the policy and to include the Auto exclusion providing coverage for Uber owned autos.

31. The Evanston Policy was thereafter issued on April 19, 2013 for a one year policy period until April 19, 2014.

32. On October 7, 2013, an email from Mr. Hahn to Vincent Colosimo, Territory Underwriting Manager with Markel, confirmed Uber's understanding that the Evanston Policy is "excess over broader CGL" coverage issued by National Union to Uber.

33. Later on October 7, 2013, Stephanie Danbrowney, Regional Underwriting Technician with Markel, responded to Mr. Hahn's email to Mr. Colosimo confirming that the Evanston Policy did not cover "livery/taxi operations", and only covered Uber's "technology aspects/opps".

34. On or about April 11, 2014, Uber sought an extension of the Evanston Policy from April 19, 2014 to June 30, 2014. In an email from Josh Chassman at Crump to Mr. Colosimo, Mr. Chassman stated "Uber does not own any vehicles, and doesn't employ any drivers. They are all independent contractors with their own vehicles".

35. Evanston's Policy does not provide excess auto liability insurance coverage as provided by Uber's primary carrier National Union Fire Insurance Company of Pittsburgh, PA ("National Union"). The Evanston Policy provides that its coverage is not identical to that in the National Union policies and specifically states "Except for the Terms, Definitions, Conditions and Exclusions of this policy, the coverage provided by this policy shall follow the Insuring Agreements, Definitions, Conditions and Exclusions of the Controlling Underlying Insurance Policy as shown in Item 4. of the Declarations."

COMPLAINT FOR DECLARATORY RELIEF

36. The Evanston Policy's Auto Liability Limitation and Designated Premises Limitation, among other provisions, also define the coverage provided to Uber and exclude any obligation to defend or indemnify Uber in the Underlying Lawsuit.

37. Evanston seeks a declaration that it owes no duty to defend or indemnify Uber for the Underlying Lawsuit.

38. An actual controversy exists between the parties with respect to their respective duties and obligation sunder the Evanston Policy. This Court has the power to make biding declarations of their rights and duties of the parties herein, and to adjudicate the dispute between the parties herein.

## FIRST CAUSE OF ACTION
### (Declaratory Relief)

39. Plaintiff hereby re-alleges and incorporates by reference each allegations contained in all preceding paragraphs of this Complaint as though fully set forth herein.

40. An actual, present and justiciable controversy has arisen and now exists between Plaintiff on the one hand and the Defendant on the other, concerning their respective rights, duties and obligations under the Evanston Policy.

41. In particular, Evanston contends that there is no coverage under the Policy for the Underlying Lawsuit based on the Policy terms set forth above. Accordingly, Evanston contends, by virtue of the language of the Policy, Evanston does not owe any obligation to defend or indemnify Uber with respect to the Underlying Lawsuit.

42. Plaintiff asserts and contends declaratory judgment is both necessary and proper at this time for the court to determine the respective rights, duties and obligations of the parties.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant as follows:

1. For a judicial declaration that Evanston is not obligated to defend or indemnify Uber with respect to the Underlying Lawsuit based upon the terms the Evanston Policy;

2. For costs of suit herein; and

10
COMPLAINT FOR DECLARATORY RELIEF

3. For such other and further relief as the Court deems just and proper.

DATED: August 31, 2015

COZEN O'CONNOR

By: *[signature]*
IRENE K. YESOWITCH
Attorneys for Plaintiff, EVANSTON INSURANCE COMPNAY

11

COMPLAINT FOR DECLARATORY RELIEF