# EXHIBIT  B

## MBT | MECKLERBULGERTILSON MARICK&PEARSON LLP

575 Market Street
Suite 2200
San Francisco, California  94105

Tel:  415-644-0914
Fax:  415-644-0978
www.mbtlaw.com

**Irene Yesowitch**
415-593-9633
irene.yesowitch@mbtlaw.com

July 22, 2014

*VIA CERTIFIED MAIL*

Mr. Gus Fuldner
Uber Technologies, Inc.
706 Mission Street, 9th Floor
San Francisco, CA  94103

     Re:    *Liu v. Uber Technologies, Inc.*
            San Francisco Superior Court Case No. CGC 14 536979
            Claim No. 0112282
            MBT No. 50769

Dear Mr. Fuldner:

      We represent Markel West Insurance Services, the claims service manager for Evanston Insurance Company regarding the insurance coverage issues in the above-referenced action. Evanston and Uber Technologies, Inc. entered into an Occurrence Excess Liability Policy for the period April 19, 2013 to April 19, 2014 (Policy No. XONJ523313).  The Evanston insurance contract is excess to a business auto insurance contract and a commercial general liability insurance contract between National Union Fire Insurance Company of Pittsburgh, PA and Uber Technologies Inc.

      The above-referenced action arises from a December 31, 2013 auto accident involving a driver who allegedly was using an Uber app.  As explained below, the Evanston insurance contract was not written to cover such risks, and the potential for coverage does not exist for Uber under the Evanston insurance contract.  Markel West Insurance Services therefore declines coverage for Uber under the Evanston insurance contract.

      Because all the facts may not be known, additional information discovered in the future might reveal additional grounds for non-coverage under the Evanston insurance contract. Markel West Insurance Services and Evanston therefore reserve the right to raise additional coverage defenses in the future, whether based on newly-discovered information or otherwise.

## BACKGROUND

A.     **Uber, Raiser LLC and Raiser-CA LLC**

      Uber was a software developer that produced smart phone apps that connected passengers to drivers who used their personal vehicles to provide pre-arranged transportation services for

Mr. Gus Fuldner
July 22, 2014
Page 2

compensation.  Uber did not own any vehicles and did not provide car service.  It strictly developed software.

Markel Insurance Services understands that Raiser LLC or Raiser-CA LLC oversaw and was otherwise responsible for the transportation services that utilized the Uber app.  According to the complaint, Raiser LLC is Uber's wholly-owned subsidiary and Raiser-CA LLC's parent.

**B.    The Lawsuit**

On December 31, 2013 at about 8:30 p.m., Huan Kang was walking to her home in San Francisco with her two children, Anthony Liu and Sofia Liu.  As they were crossing Polk Street where it intersects Ellis Street, a car driven by Syed Muzzafar turned right from Ellis and struck Ms. Kang and her children.  The collision allegedly killed Sofia Liu and caused physical and mental injuries to Ms. Kang, Anthony Liu, and Sofia Liu's father, Ang Jiang Liu.  When the accident occurred, Mr. Muzzafar allegedly was using the Uber app and allegedly was Uber's, Raiser LLC's or Raiser-CA LLC's agent, employee or partner.

On or about January 27, 2014, Mr. Liu, as an individual, as guardian ad litem for Anthony Liu, and as successor-in-interest on behalf of Sofia Liu's estate, Anthony Liu and Ms. Kang sued Uber, Raiser LLC, Raiser-CA LLC, and Mr. Muzzafar in San Francisco Superior Court.  Their causes of action include:  (1) wrongful death; (2) negligence—motor vehicle; (3) negligent infliction of emotional distress; (4) negligence; (5) negligence per se; (6) strict products liability; (7) negligent hiring, retention and supervision; (8) loss of consortium (by Ang Jiang Lin); and (9) wrongful death (by Ang Jiang Lin).  Plaintiffs pray for special and general damages; damages for the decedent under Code of Civil Procedure section 377.34; wrongful death damages under Code of Civil Procedure section 377.61; punitive damages under Civil Code section 3294; prejudgment interest; and other and further relief as the court may deem proper.

**C.    The Evanston Insurance Contract**

Evanston and Uber entered into an Occurrence Excess Liability Policy for the period April 19, 2013 to April 19, 2014 (Policy No. XONJ523313).  The Evanston insurance contract contains a $5 million each occurrence limit and a $5 million annual aggregate.  The Evanston insurance contract is excess to a commercial general liability insurance contract between National Union Fire Insurance Company of PA and Uber for the period April 19, 2013 to April 13, 2014 (Policy No. 536-15-39) and a business automobile insurance contract between National Union and Uber for the period April 19, 2013 to April 13, 2014 (Policy No. 230-49-85).  The National Union commercial general liability insurance contract contains a $1 million each occurrence limit and a $2 million general aggregate.  The National Union business auto insurance contract contains a $1 million liability limit.  The Evanston insurance contract is excess to and follows form to the National Union insurance contracts, expect for the terms, definitions, conditions and exclusions in the Evanston insurance contract.

The Evanston insuring agreement provides:

Mr. Gus Fuldner
July 22, 2014
Page 3

    1.   The Company hereby agrees to pay on behalf of the Insured that portion of Ultimate Net Loss in excess of the limits of Underlying Insurance as shown in Item 4. of the Declarations, but only up to an amount not exceeding the Company's Limit of Liability as shown in Item 3. of the Declarations.  Except for the Terms, Definitions, Conditions and Exclusions of this policy, the coverage provided by this policy shall follow the Insuring Agreements, Definitions, Conditions and Exclusions of the Controlling Underlying Insurance Policy as shown in Item 4. of the Declarations.

    2.   The inclusion or addition hereunder of more than one Insured shall not operate to increase the Company's Limit of Liability beyond that set forth in Item 3. of the Declarations.  ....

    ....

The Evanston insurance contract contains the following definitions:

    1.   **Each Annual Period.**

    The term "Each Annual Period" shall mean consecutive period of one year commencing from the inception date of this policy.

    2.   **Ultimate Net Loss.**

    "Ultimate Net Loss" means the total amount of damages for which the insured is legally liable in payment of "bodily injury", "property damage", "personal injury", or "advertising injury."  "Ultimate Net Loss" may be established by adjudication, arbitration, or a compromise settlement to which we have previously agreed in writing.  "Ultimate Net Loss" shall be reduced by any recoveries ... which have been paid or will be collected, but the amount of "ultimate net loss" shall not include any expenses incurred by an insured, by us, or by any "underlying insurer."

    3.   **Underlying Insurance.**

    The term "Underlying Insurance" shall mean the policy or policies listed in Item 4. of the Declarations.

The Evanston insurance contract contains the following exclusions:

    **It is agreed that the aggregate limits shown in Item 4. Schedule of Underlying Insurance, shall neither be reduced or**

Mr. Gus Fuldner
July 22, 2014
Page 4

> **exhausted by reason of any paid losses caused by, or arising out of the Exclusions listed below:**
>
> This policy shall not apply:
>
> ....
>
> 8.  "Ultimate Net Loss" arising out of or in connection with punitive damages, exemplary damages, treble damages or any multiple of a compensatory award in whatever form assessed.

The Evanston insurance contract contains an Auto Liability Limitation, which provides:

> This endorsement modifies insurance provided under the following:
>
> OCCURRENCE EXCESS LIABILITY POLICY
>
> In consideration of the premium charged, it is hereby understood and agreed that this policy shall not apply to "Ultimate Net Loss" for any loss, cost and/or expenses arising out of, resulting from, caused by, or in any way contributed to the ownership, maintenance, use or entrustment to others of any auto:
>
> 1.  While away from premises you own, rent, or occupy; or
>
> 2.  Owned by or rented or loaned to any insured.
>
> As used in this limitation, use includes operation and loading or unloading.
>
> However, this limitation endorsement shall not apply except to the extent that coverage is provided by a policy or policies shown in the Schedule of Underlying Insurance and then only to the extent that coverage is provided by such policy or policies.
>
> All other terms and conditions remain unchanged.

The Evanston insurance contains a Designated Premises Limitation, which provides:

> This policy shall only apply to "Ultimate Net Loss" arising out of operations at the following designated premises only:
>
> Loc. #01 - 675 Massachusetts Avenue 10th, Cambridge, MA 02139
>
> Loc. #02 - 920 Santa Monica Blvd., Santa Monica, CA 90401

Mr. Gus Fuldner
July 22, 2014
Page 5

        Loc. #03 - 800 Market Street, 7th Floor, San Francisco, CA 94102

        Loc. #04 - 1712 N. Street NW, Suite 101, Washington, DC 20036

        Loc. #05 - 230 West Superior, Suite 200, Chicago, IL 60654

        Loc. #06 - 33 Nassau Ave., Suite 2, Brooklyn, NY 11222

        Loc. #07 - 1808 Bellevue Ave., Ste. 201, Seattle, WA 98122

        Loc. #08 - 405 Howard Street, 5th Floor, San Francisco, CA

        Loc. #09 - 1062 Delaware St., Denver, CO 80204

        Loc. #10 - 1650 Arch St., Ste. 1906, Philadelphia, PA

        Loc. #11 - 2919 Commerce Street, Dallas, TX

        Loc. #12 - 1729 21st Street NW, Washington, DC 20009

All other terms and conditions remain unchanged.

**D.    The National Union Commercial General Liability Insurance Contract**

The National Union commercial general liability insurance contract insuring agreement provides:

> We will pay those sums that the insured becomes legally obligated
> to pay as damages because of "bodily injury" or "property
> damage" to which this insurance applies.  We will have the right
> and duty to defend the insured against any "suit" seeking those
> damages.  However, we will have no duty to defend the insured
> against any "suit" seeking damages for "bodily injury" or
> "property damage" to which this insurance does not apply…

The National Union insurance contract contains the following Designated Ongoing Operations Exclusion:

> This insurance does not apply to "bodily injury" or "property
> damage" arising out of the ongoing operations described in the
> Schedule of this endorsement, regardless of whether such
> operations are conducted by you or on your behalf or whether the
> operations are conducted for yourself or for others."

The schedule lists "all exposures and operations with Raiser."

The National Union insurance contract excludes coverage for "bodily injury" or "personal injury" arising of the ownership, maintenance or use of any auto owned, operated by or rented to an insured:

Mr. Gus Fuldner
July 22, 2014
Page 6

This insurance does not apply to:

....

g.  **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the
ownership, maintenance, use or entrustment to others of any
aircraft, "auto" or watercraft owned or operated by or rented or
loaned to any insured.  Use includes operation and "loading or
unloading."

This exclusion applies even if the claims against any insured
allege negligence or other wrongdoing in the supervision,
hiring, employment, training or monitoring of others by that
insured, if the "occurrence" which caused the "bodily injury"
or "property damage involved the ownership, maintenance, use
or entrustment to others of any aircraft, "auto" or watercraft
that is owned or operated by or rented or loaned to any
insured."

National Union denied Uber's claim for coverage under the commercial general liability
insurance contract.  National Union based its denial on the grounds that the designated
operations exclusion and that the auto exclusion bar coverage.

E.  **The National Union Business Auto Policy**

The National Union business auto insurance contract limits coverage to certain "hired
autos" and "non-owned autos":

8.  Hired "Autos" Only

Only those "autos" you lease, hire, rent or borrow.  This does
not include any "auto" you lease, hire, rent or borrow from any
of your employees" partners (if you are a partnership),
members (if you are a limited liability company) or members
of their households.

9.  Nonowned "Autos" Only

Only those "autos" you do not own, lease, hire, rent or borrow
that are used in connection with your business.  This includes
"autos" owned by your "employees," partners (if you are a
partnership), members (if you are a limited liability company),
or members of their households but only while used in your
business or your personal affairs.

Mr. Gus Fuldner
July 22, 2014
Page 7

The National Union business auto policy insurance contract insuring agreement provides:

> We will pay all sums an "insured" legally must pay as damages
> because of "bodily injury" or "property damage" to which this
> insurance applies, caused by an "accident" and resulting from the
> ownership, maintenance or use of a covered "auto."

The insurance contract provides that "accident" "includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or property damage."

> "Auto" means "[a] land motor vehicle …."

The insurance contract's other insurance provision makes the National Union insurance contract excess to insurance for non-owner vehicles:

> … For any covered "auto" you don't own, the insurance provided
> by this Coverage Form is excess over any other collectible
> insurance. …

Because the complaint alleges that the subject auto was used in connection with Uber's business, but not owned by Uber, National Union agreed to defend Uber under the National Union business auto insurance contract subject to a full reservation of rights. Because the subject auto was not owned by Uber, National Union is asserting that its insurance contract is excess over any other insurance available to Uber, including a business auto insurance contract between James River and Raiser, LLC (Policy No. CA43600143).

## F.    Underwriting Information

As part of its investigation, Markel reviewed the underwriting files attendant to the issuing of policy number X0NJ523313 to Uber Technologies, Inc. The review confirmed that the policy was not intended to provide auto coverage for any of the taxis or limos associated with the Uber concept.

During the initial underwriting of the policy, Johann Hunter, Senior Underwriter with Markel, had several communications with Matt Hahn from Crump Insurance, regarding the auto exposure that Uber was requesting that Markel bind. Specifically, on April 15, 2013, at 9:33 a.m., she asked Mr. Hahn:

> Please advise the following regarding the auto exposure for
> consideration for a separate quote contemplating that coverage:
>
> (1) Do clients sign waivers/disclaimers? Do they mention auto?
> Please provide a copy of the document.
>
> (2) Provide the Hired and Non-Owned exposure, i.e. number of
> vehicles. Provide written description of the Hired and Non-Owned

Mr. Gus Fuldner
July 22, 2014
Page 8

exposure.  As per our conversation it should be salespeople for
Uber Technology and no auto exposure for any of the taxi or limo
companies at all.

Approximately 1½ hours later Mr. Hahn replied, in relevant part, as follows:

I am confirming that the H&N owned is for Uber salespeople
ONLY.  This is not to pick up ANY livery, taxi or limo operations
whatsoever.  I have followed up for number of vehicles and will
advise ASAP.

Several hours later Mr. Hahn sent another email to Ms. Hunter, explaining in more detail,
as follows:

I just spoke to the broker and they do not have a number of
vehicles for the H&N owned, they are looking for coverage for this
on more of an "if any basis".  I guess the scenario where this
coverage would in to play would be if one of the employees has to
pick up supplies or anything needed for their offices.

Thereafter, Ms. Hunter had several email exchanges with internal Markel underwriters
concerning the "HNOA" definition.  In one she noted,

The HNOA definition is a bit gray in my opinion as well however;
they're saying that the exposure is any non-owned vehicles used by
the company for company business (sales, etc.).

The policy was thereafter issued.  Of significance, after the policy was issued, on October
7, 2013, an email from Mr. Hahn to Vincent Colosimo, Territory Underwriting Manager with
Markel, further provides insight into the underwriting intent.  That email provides, in relevant
part, as follows:

Vince,

Thanks for your assistance last week on your day off.  I have been
trying to get ahold of Johann but have not been successful so I am
hoping you can help me out.  This account has been moved over to
another retail broker, Woodruff Sawyer who is based out of San
Francisco.  We have a relationship and they are keeping us on the
account.  After reviewing the whole program the new broker has
asked for some following clarifications.

- The designated premises endorsement has wording that
they would like some kind of clarification on.  The
endorsement states that policy shall apply to UNL arising

Mr. Gus Fuldner
July 22, 2014
Page 9

> out of operations at the premises listed on the endorsement.
> They would like clarification that the wording does make
> our layer premises only policy.  I explained to them there is
> evidence elsewhere in the policy that coverage is excess
> over broader CGL and they reviewed and agreed.  Is there a
> way we can amend or provide other wording that would
> make the new retailer more comfortable that we are
> covering more that [sic] premises operations for the
> offices??
>
> …
>
> Thanks, Matt Hahn

In response, Stephanie Danbrowney, Regional Underwriting Technician with Markel,
responded as follows:

> Matt,
>
> … Johann is no longer with the company as an FYI of why you
> could not get in touch with her.  As for the designated premises
> endt, it looks as though Johann used this endt to ensure we were
> not covering over livery/taxi operations and only covering the
> technology aspects/opps.

Therefore, based on these communications, it is clear that Markel never intended to
provide, and does not provide, coverage for the type of claim as alleged in the *Lieu v. Uber*
lawsuit.

## ANALYSIS

The Evanston insurance contract was written to provide coverage to Uber only for
liability relating to operations at certain designated premises and not for any claims or liability
arising from the operation of any vehicle away from premises it owned, rented or occupied.
Because the accident did not arise out of operations at a designated premises and involved the
operation of a vehicle away from premises that Uber owned, rented or occupied, the Evanston
insurance contract does not apply.

### A.    The Designated Premises Limitation Precludes Coverage For Uber

The Evanston Designated Premises Limitation confines coverage to liability arising out
of operations at certain designated premises.  Because the accident did not arise out of operations
at any of those designated premises, the Evanston insurance contract does not provide coverage.
Evanston denies coverage to Uber based on this limitation.

Mr. Gus Fuldner
July 22, 2014
Page 10

**B.     The Auto Liability Limitation Precludes Coverage for Uber**

The Evanston Auto Liability Limitation precludes coverage for liability arising out of the use of any auto while away from premises owned, rented or occupied by Uber, or arising out of any auto owned by or loaned to any insured.  Because the accident occurred away from Uber's premises, the Evanston insurance contract does not provide coverage.  And to the extent that Mr. Muzzafar qualifies as an Evanston insured, the Evanston insurance contract does not provide coverage.  Evanston denies coverage to Uber based on this limitation.

**C.     The Evanston Insurance Contract Does Not Provide Commercial General Liability Insurance Coverage for Uber**

National Union denied commercial general liability insurance coverage for Uber based on the designated ongoing operations exclusion.  The exclusion bars coverage for "bodily injury" or "property damage" arising out of "all exposures and ongoing operations with Raiser."  For the same reason, the Evanston insurance contract does not provide commercial general liability insurance coverage to Uber.  Evanston denies commercial general liability insurance coverage to Uber based on this exclusion and on the ground that the Evanston insurance is excess to National Union's.

**D.     The Evanston Insurance Contract Does Not Cover Claims For Punitive Damage**

Plaintiffs pray for punitive damages.  Such damages are precluded by the punitive damage exclusion in the Evanston insurance contract and by Insurance Code §533.  Evanston denies coverage to Uber for any such damage claims.

------------------------------

This letter does not an exhaustively list all of the terms, conditions, exclusions or limitations in the insurance contract or the underlying insurance contracts which might bar or limit Evanston's obligations in this matter.  Other facts and circumstances, as well as other provisions in the Evanston insurance contract or the underlying insurance contracts, may exist that would further serve to relieve Evanston from any coverage obligation.  Therefore, please be advised that this correspondence shall not be deemed or construed as a waiver of any rights or defenses available to Evanston, including but not limited to those rights and defenses provided under the insurance contract, at law or in equity, all of which Evanston reserves.

Should you or Uber have any further information or documents that you believe would affect Markel West Insurance Services' and Evanston's coverage position, please provide them to us for Markel West Insurance Services' consideration.

Mr. Gus Fuldner
July 22, 2014
Page 11


   Please be advised that should Uber disagree in any way with any coverage position taken by Markel West Insurance Services or Evanston regarding the above-referenced action, the Uber may have that position reviewed by the California Department of Insurance, Claims Service Bureau, 11th Floor, 300 South Spring Street, Los Angeles, CA  90013, (800) 927-4357.

       Very truly yours,


       Irene K. Yesowitch



cc:  Sheri-Ann Marcinkiewicz (via email)




34607