EXHIBIT  D

A STOCK COMPANY



## EVANSTON INSURANCE COMPANY

Ten Parkway North
Deerfield, Illinois 60015

**INSURANCE POLICY**

**Coverage afforded by this policy is provided by the Company (Insurer) and named in the Declarations.**

In **Witness Whereof**, the company (insurer) has caused this policy to be executed and attested and countersigned by a duly authorized representative of the company (insurer) identified in the Declarations.

*Kathleen Anne Sturgeon*
**Secretary**

*Gerry Albanese*
**President**

MJIL 1000 08 10

Page 1 of 1

INTERLINE



# EVANSTON INSURANCE COMPANY

## PRIVACY NOTICE

Markel Corporation and its affiliated companies are committed to safeguarding your privacy and protecting your personal information. Please be assured that we do not sell this information to anyone for marketing or any other purpose and we have strict policies and procedures in place to protect the confidentiality of all non-public personal financial information.

The following outlines our privacy practices:

We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications or other forms;

- Information about your transactions with us, our affiliates, or others;

- Information we receive from a consumer reporting agency; and/or

- Information we receive from inspection reports.

We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as permitted by law.

When necessary, we may disclose non-public personal information about you to non-affiliated third parties for the purposes of underwriting, administering your policy or claim, and other purposes permitted by law such as disclosures to regulatory authorities or in response to legal processes. For example, we may share your information with financial service providers such as insurance agents and/or brokers who work with us.

We restrict access to nonpublic personal information about you to only those employees who need to know that information in order to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal standards to guard your nonpublic personal information.

We appreciate your business. Thank you for placing your trust in Markel.



**MARKEL®**

# EVANSTON INSURANCE COMPANY

## EXCESS LIABILITY POLICY
## DECLARATIONS

**POLICY NUMBER:** XONJ523313                    **RENEWAL OF POLICY:** New

**Item 1.**

| Named Insured and Mailing Address (No., Street, Town or City, County, State, Zip Code) |
| --- |
| Uber Technologies, Inc. |
| |
| 800 Market Street, 7th Floor |
| San Francisco, CA 94102 |
| Policy Period: From 04/19/2013 to 04/19/2014 at 12:01 A.M. Standard Time at your mailing address shown above. |
| Retroactive Date: (This policy's inception date applies unless otherwise noted here) Not Applicable |

**Item 2.**

| Policy Premium | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| Deposit Premium: | $ ▓▓▓▓ | (check flat or adjustable) | Flat Premium:X | Or | | Adjustable Premium: |
| | | Rate: $ | Per: | | Basis: | |
| Additional Premium to Include Terrorism: Rejected | | | | | | |
| Policy Premium: | $ ▓▓▓▓ | | | Policy Minimum Earned: 25% | | |

**Item 3.**

| Policy Limit | | |
| --- | --- | --- |
| a.   Limits of Liability | $ 5,000,000 | Each Occurrence |
| | $ 5,000,000 | Annual Aggregate (where applicable) |
| b.   Which is part of | Not Applicable | Each Occurrence/Aggregate |
| Attaching excess of: Not Applicable | | |

| Producer Number, Name and Mailing Address |
| --- |
| 0032G |
| CRC|Crump |
| 199 Water Street, 28th Floor |
| New York, NY 10038 |

Item 4.

| Schedule of Underlying Insurance | |
| --- | --- |
| **Underlying Coverages** | **Underlying Limits of Liability:** |
| (Insurer, Policy Number, Policy Period) | |
| Chartis | $1,000,000  Each Occurrence |
| (policy number as per policy on file with company) | $2,000,000  General Aggregate |
| 04/19/2013  to  04/19/2014 | $2,000,000  Products/Completed Operations Aggregate |
| Coverage:  Commercial General Liability | $1,000,000  Personal and Advertising Injury |
| | |
| Chartis | $1,000,000  Combined Single Limit |
| (policy number as per policy on file with company) | |
| 04/19/2013  to  04/19/2014 | |
| Coverage:  Hired and Non-Owned Automobile Liability | |
| | |
| Not Applicable | |
| (policy number as per policy on file with company) | |
|      to | |
| Coverage: | |

Item 5.

| Endorsements |
| --- |
| Forms and Endorsements attached to this policy at time of issuance: |
| See Schedule of Forms and Endorsements attached. |

Countersigned: _____04/30/2013_____  By:  _____

                                         **Date**                                    **AUTHORIZED REPRESENTATIVE**

NY Free Trade Zone Code: Not Applicable



**MARKEL** ®

**EXCESS/UMBRELLA**
POLICY NUMBER: XONJ523313

# EVANSTON INSURANCE COMPANY

## SCHEDULE OF FORMS AND ENDORSEMENTS

| | |
|---|---|
| MJIL 1000 08 10 | Evanston Jacket |
| MPIL 1007 04 10 | Privacy Notice |
| MEU 2001 10 12 | Excess Liability Policy Declarations Evnst/Esx |
| MEU 2002 08 95 | Schedule of Forms and Endorsements |
| MEU 2000 01 09 | Excess Liability Policy Form |
| MEIL 1200 01 10 | Service of Suit |
| MEU 5010 08 95 | Aircraft Products/Grounding Exclusion |
| MEU 5070 08 95 | Care, Custody Or Control Exclusion |
| MEU 5093 08 95 | Lead Contamination Exclusion |
| MEU 5250 08 95 | Professional Liability Exclusion |
| MEU 5303 08 95 | Silica Exclusion |
| MEU 5405 02 05 | Intellectual Property Hazard Exclusion |
| MEU 5409 01 09 | Computer Related & Other Electronic Products Excl |
| MEU 5418 10 00 | Prior Incidents and Prior Construction Defects |
| MEU 5419 12 00 | Cross Suits Exclusion |
| MEU 5444 03 05 | Employment Practices Liability Exclusion |
| MEU 5445 04 05 | Blast Faxing Exclusion |
| MEU 5451 12 07 | Terrorism Exclusion |
| MEU 6070 08 95 | Designated Premises Limitation |
| MEU 6095 10 98 | Products Recall Exclusion |
| MEU 7020 10 95 | Unimpaired Aggregate Endorsement |
| MEU 7064 01 09 | Non Stacking or Non Pyramiding of Limits Endt |
| MEU 7069 05 01 | Non-Drop Down Provision |
| MEUB 2300 02 11 | Auto Liability Limitation |
| MRE 159 01 09 | Personal and Advertising Injury Exclusion |
| MRE 251 01 09 | Cyber Risk Exclusion |

**EXCESS/UMBRELLA**



# EVANSTON INSURANCE COMPANY

## OCCURRENCE EXCESS LIABILITY POLICY

### PROVISIONS

Various provisions of this policy restrict coverage.  Read the entire policy carefully to determine rights, duties, and what is and is not covered.

In consideration of the payment of the premium, and in reliance upon the statements and representations made in the Application, and subject to mutual agreements set forth herein and in the DECLARATIONS, and subject to all the terms and conditions of this policy, the COMPANY hereby agrees with the Insured as follows:

### SECTION A – INSURING AGREEMENTS

1.  The Company hereby agrees to pay on behalf of the Insured that portion of Ultimate Net Loss in excess of the limits of Underlying Insurance as shown in Item 4. of the Declarations, but only up to an amount not exceeding the Company's Limit of Liability as shown in Item 3. of the Declarations.  Except for the Terms, Definitions, Conditions and Exclusions of this policy, the coverage provided by this policy shall follow the Insuring Agreements, Definitions, Conditions and Exclusions of the Controlling Underlying Insurance Policy as shown in Item 4. of the Declarations.

2.  The inclusion or addition hereunder of more than one Insured shall not operate to increase the Company's Limit of Liability beyond that set forth in Item 3. of the Declarations.  We will follow form over Additional Insureds covered in the Controlling Underlying Insurance to the extent of their liability due to the negligence of the Named Insured.  This policy does not follow form as respects "Primary Non-Contributory" wording for Additional Insureds or any other third parties.

3.  If an amount is shown in Item 3.b. of the Declarations, it is agreed that the Company's Limit of Liability as shown in Item 3.a. of the Declarations is limited to the Company's quota-share participation for that portion of Ultimate Net Loss as it applies as part the larger Limit of Liability shown in Item 3.b. of the Declarations.  Under no circumstances will the Company's Limit of Liability exceed the policy limits shown under Item 3.a. of the Declarations.

### SECTION B – DEFINITIONS

1.  **Each Annual Period.**

    The term "Each Annual Period" shall mean consecutive period of one year commencing from the inception date of this policy.

2.  **Ultimate Net Loss.**

    "Ultimate Net Loss" means the total amount of damages for which the insured is legally liable in payment of "bodily injury", "property damage", "personal injury", or "advertising injury."  "Ultimate Net Loss" may be established by adjudication, arbitration, or a compromise settlement to which we have previously agreed in writing.  "Ultimate Net Loss" shall be reduced by any recoveries or salvages which have been paid or will be collected, but the amount of "ultimate net loss" shall not include any expenses incurred by an insured, by us, or by any "underlying insurer."

3.  **Underlying Insurance.**

    The term "Underlying Insurance" shall mean the policy or policies listed in Item 4. of the Declarations.

| SECTION C – CONDITIONS |
|---|

1. **Changes.**

   The Company shall be promptly notified of any coverage or limit change(s) made to the Underlying Insurance after the inception date of this policy.

2. **Premium.**

   1. We will compute all premiums for this policy in accordance with our rules and rates.

   2. For policies issued on an adjustable basis (not a flat basis), upon expiration of this policy or its termination during the policy period, the earned premium shall be computed on the basis of units of exposure times the rate.  If the earned premium thus computed is more than the Policy Premium paid, the insured shall immediately pay the excess to the Company, if less, the Company shall retain the Policy Minimum Earned as stated in the Declarations. The Policy Minimum Earned is the smallest amount of premium that is fully earned in the event of cancellation, initiated by any party, prior to policy expiration.

   3. The first Named Insured must keep records of the information we need for premium computation, and must send us copies at such times as we may request.

   4. The Insured shall cooperate in promptly providing the adjustable basis of premium to the Company, including making their books available for verification of the information for a period of three years from the expiration date. If the Insured fails to cooperate, the Company has the right to invoice an estimated audit which is due and payable immediately.  The Insured must pay all costs or expenses resulting from their failure to cooperate or their failure to pay an audit invoice.

   5. The first Named Insured shown in Item 1. of the Declarations is responsible for the payment of all premiums, and will be the payee for any return premiums we pay.

3. **Duties in the Event of Accident, Occurrence, Claim or Suit.**

   You must see to it that we or our authorized representative and your underlying insurers:

   a. are notified as soon as practicable of any accident or occurrence which may result in a claim if the

      claim may involve this policy or any underlying insurance;

   b. receive notice of the claim or suit as soon as practicable.  Notice shall include:

      1) How, when and where the accident or occurrence took place;

      2) The Insured's name and address;

      3) The names and addresses of any injured persons and witnesses; and

      4) The nature and location of any injury or damage arising out of the accident or occurrence.

   c. are assisted, upon our request, in the enforcement of any right against any person or organization which may be liable to you or any other Insured because of injury or damage to which this insurance may apply; and

   d. receive the Insured's full cooperation in the investigation, adjustment, settlement or defense of any claim or suit.

   In addition, it is a requirement of this policy that:

   a. the Insured not make any admission of liability;

   b. no Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense other than for first aid without our written consent;

   c. you immediately send us copies of any demands, notices, summonses or legal paper received in connection with a claim or suit involving you or any other Insured.

4. **Defense.**

The Company shall not be called upon to assume charge of the investigation, settlement or defense of any claim made, or suit brought, or proceedings instituted against the Insured, but shall have the right and be given the opportunity to be associated in the defense and trial of any such claim, suit or proceeding relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of this policy.  If the Company avails itself of such right and opportunity the Company shall do so at its own expense.

Court costs and interest, if incurred with the consent of the Company, shall be borne by the Company and other interested parties in the proportion that each party's share of the Ultimate Net Loss bears to the total amount of Ultimate Net Loss sustained by all interested parties.

5. Cancellation.

This policy may be canceled by the Named Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter the cancellation shall be effective.  This policy may be canceled by the Company by mailing to the Named Insured at the address shown in this policy, written notice stating when not less than ten (10) days for non-payment of the premium or thirty (30) days for other than non-payment of the premium thereafter such cancellation shall be effective.  The mailing of notice as aforesaid shall be sufficient proof of notice.  The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period.  Delivery of such written notice, either by the Named Insured or by the Company, shall be equivalent to mailing.

The Insured first named in the Declarations is authorized to act on behalf of all Named Insureds and other Insureds with respect to the giving and receiving of notice of cancellation and to the receiving of any return premium that may become payable under this policy.

If the Named Insured cancels, earned premium shall be computed in accordance with the short rate table and procedure in use for this policy.  If the Company cancels, earned premium shall be computed pro rata.  Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation become effective, but payment or tender of unearned premium is not a condition of cancellation.  In the event of cancellation by the Named Insured, earned premium shall in no case be less than the Policy Minimum Premium stated in the Declarations.

6. **Maintenance of Underlying Insurance.**

The limits of the Underlying Insurance shall be unimpaired as of this policy's effective date and be maintained in full effect during the currency of this policy except for reduction of such limits by exhaustion of aggregate limits (if any) contained therein by paying or by having been held liable to pay for damages for accident(s) or occurrence(s), whichever is applicable, during Each Annual Period of this policy.  Failure of the Insured to comply with the foregoing shall not invalidate this policy, but in the event of such failure, the Company shall be liable only to the extent that it would have been held liable had the Insured complied therewith.  In the event of the Insolvency of the Underlying Insurer, the Company shall only be liable to the same extent as it would have been liable had the limits of the Underlying Insurance been maintained and were fully collectible.

## SECTION D – EXCLUSIONS

**It is agreed that the aggregate limits shown in Item 4. Schedule of Underlying Insurance, shall neither be**

**reduced or exhausted by reason of any paid losses caused by, or arising out of the Exclusions listed below:**

This policy shall not apply:

1. To "Ultimate Net Loss":

   a. arising out of or contributed to in any way by the actual, alleged or threatened discharge, dispersal, release, migration, escape, or seepage of pollutants; or

   b. any loss, cost or expense arising out of any:

      1) request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants; or

2) claim or suit whether by or on behalf of any governmental authority or any other entity for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of pollutants.

As used in this exclusion, pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste.  Waste includes material, to be recycled, reconditioned, reclaimed or disposed of.

2.  To "Ultimate Net Loss' arising out of or in connection with:

a.  asbestos or asbestos-related material(s) lead, or silica dust, regardless of whether used, manufactured, sold, handled, maintained, repaired, removed, disposed of, transported, distributed, installed by, or in any way connected with the Insured; or

b.  the existence of asbestos or asbestos-related material(s), lead, or silica dust, in any goods, products, materials, storage devices, containers, wrappings, packaging, warehouses, buildings, or other structures of any kind, or any part thereof; or

c.  any goods or products which are damaged, contaminated, or otherwise affected by asbestos or any asbestos-related material(s), lead or silica dust; or

d.  asbestos abatement activities, including clean-up, repair, or any other corrective measures which are occasioned by the existence of asbestos in any land, soil, water or watercourses, the atmosphere and/or building(s), whether voluntarily undertaken or required by any governmental body or other entity to eliminate asbestos or asbestos-related material(s), lead, or silica dust; or

e.  Any supervision, instructions, recommendations, warnings, or advice given or which should have been given, and any obligation to share damages with or repay someone else who must pay damages in connection with a., b., c., or d. above.

3.  "Ultimate net loss" arising out of or in connection with:

a.  "Bodily injury," "property damage" and/or " personal and advertising injury" which would not have occurred in whole or in part but for the actual, alleged or threatened contact with, exposure to, or inhalation, ingestion, absorption, discharge, dispersal seepage, migration, release, escape, presence, growth or reproduction of "mold."

b.  Costs and expenses to investigate or defend any claim or "suit" or payment of any fine or penalty for a. above.

c.  Any loss, cost, expense, fine or penalty arising out of any:

i.  Claim, "suit," request, demand, order or statutory or regulatory requirement than any insured or others test for, monitor, clean up, remove, abate, mitigate, remediate, dispose of, contain, treat, detoxify or neutralize, or in any way respond to, or assess the concentration or effects of "mold," or

ii.  Claim or "suit" for damages because of testing for, monitoring, cleaning up, removing, abating, mitigating, remediating, disposing of, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the concentration or effects of "mold."

This exclusion c (i) and c (ii) applies to any actual or alleged supervision, instructions, recommendations, warnings or advice given or which should have been given by any insured or others.

This exclusion a. to c. above applies to:

a.  "Bodily injury", "property damage" and "personal and advertising injury" regardless of whether such is included within the "products-completed operations hazard;"

b.  Any obligation to share damages with or repay someone else who must pay damages; and

c.  "Mold" existing, emanating from or moving anywhere indoors or outdoors.

As used in this endorsement, the following term has the following meaning:

"Mold" means any permanent or transient fungus, mold, mildew or mycotoxin, or any of the spores, scents or byproducts resulting therefrom regardless of whether they are proved to cause disease, injury or damage.

4.  To "Ultimate Net Loss" arising out of any claim or claims made by or against the Insured with respect to any uninsured/underinsured motorist or automobile no fault or first party personal injury law.

5.  To "Ultimate Net Loss" arising out of the Employee Retirement Income Security Act of 1974 (ERISA) as now or hereafter amended or any similar state or other governmental law.

6.  To "Ultimate Net Loss" arising out of or that results from any consequence, direct or indirect, due to war, whether or not declared, or an act or condition incident to war.  War includes invasion, act of a foreign enemy, hostilities, civil war, insurrection, rebellion, military or usurped power, strike, riot, civil commotion, revolution, or acts of terrorism.

7.  To "Ultimate Net Loss" :

   a.  with respect to which an Insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   b.  arising out of "hazardous properties" of "nuclear material" and with respect to which:

      1)  any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

      2)  the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   c.  arising out of "hazardous properties" of "nuclear material" if:

      1)  the "nuclear material"

         a)  is at any "nuclear facility" owned by, or operated by or on behalf of an Insured, or

         b)  has been discharged or dispersed therefrom;

      2)  the "nuclear material" is contained in "spent fuel" or "waste" at any time process, handled, used, possessed, stored, transported or disposed of by or on behalf of an Insured; or

      3)  the bodily injury or property damage arises out of the furnishing by an Insured of services, material, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if any such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to Property Damage to such nuclear facility any property thereat.

   As used in this exclusion:

   "hazardous properties" include radioactive, toxic or explosive properties;

   "nuclear material" means "source material," "special nuclear material" or "byproduct material";

   "source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

   "waste" means any waste material:

   a)  containing byproduct material, and

   b)  resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph a) or b) below:

   "nuclear facility" means:

   a) any nuclear reactor;

**MEU 2000 01 09**

b) any equipment or device designed or used for:

    1) separating the isotopes or uranium or plutonium,

    2) processing or utilizing spent fuel, or

    3) handling, processing or packaging "waste";

c) any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

d) any structure, basin, excavation premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means many apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property Damage" includes all forms of radioactive contamination of property.

8. "Ultimate Net Loss" arising out of or in connection with punitive damages, exemplary damages, treble damages or any multiple of a compensatory award in whatever form assessed.

INTERLINE



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SERVICE OF SUIT

All Coverage Parts included in this policy are subject to the following:

Except with respect to any policy issued in any state in which the Insurer is licensed as an admitted insurer to transact business, it is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising here-under shall be determined in accordance with the law and practice of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Secretary, Legal Department, Markel Midwest, Ten Parkway North, Deerfield, Illinois 60015 and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any benefi-ciary hereunder arising out of this policy, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms and conditions remain unchanged.

**EXCESS/UMBRELLA**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AIRCRAFT PRODUCTS / GROUNDING EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that this policy shall not apply to "Ultimate Net Loss" for any loss, cost and/or expense arising out of, resulting from, caused by, or in anyway contributed to any aircraft product or the grounding of any aircraft.

Aircraft product means:

1. Aircraft (including missile or spacecraft, and any ground support or control equipment used therewith);

2. Any article furnished by you or on your behalf and installed in an aircraft or used in connection with an aircraft, or for spare parts for an aircraft, including ground handling tools and equipment;

3. Any of "your products" used at an airport for the purpose of guidance, navigation or direction of aircraft; and

4. Training aids, instructions, manuals, blueprints, engineering or other data or advice, and services and labor relating to such aircraft, articles or products.

Grounding means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft, by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such aircraft or any part thereof sold, handled or distributed by you or on your behalf, or manufactured, assembled or processed by any other person or organization,

1. According to specifications, plans, suggestions, orders, or drawings provided by you or on your behalf, or

2. With tools, machinery or other equipment furnished to such persons or organizations by you or on your behalf, whether such aircraft so withdrawn are owned or operated by the same or different persons, organizations or corporations.

All other terms and conditions remain unchanged.

EXCESS/UMBRELLA



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CARE, CUSTODY OR CONTROL EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that this policy shall not apply to "Ultimate Net Loss" for any loss, cost and/or expense arising out of, resulting from, caused by, or in anyway contributed to property damage to:

1.  Property rented to, leased to, occupied by, used by, or owned by any Insured;

2.  Property loaned to any Insured; or

3.  Property in the care, custody, or control of any Insured, or for which any Insured is for any purpose exercising physical control.

All other terms and conditions remain unchanged.



EXCESS/UMBRELLA

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LEAD CONTAMINATION EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that this policy shall not apply to "Ultimate Net Loss" for any loss, cost and/or expense arising out of, resulting from, caused by, or in anyway contributed to or in connection with:

    a.   the ingestion, inhalation, absorption or otherwise arising from any form of lead;

    b.   any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

    c.   any "claim" or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

All other terms and conditions remain unchanged.

**EXCESS/UMBRELLA**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PROFESSIONAL LIABILITY EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that this policy shall not apply to "Ultimate Net Loss" for any loss, cost and/or expense arising out of, resulting from, caused by, or in anyway contributed to the rendering of or failure to render any professional service.

All other terms and conditions remain unchanged.

EXCESS/UMBRELLA



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SILICA EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that this policy shall not apply to "Ultimate Net Loss" for any loss, cost and/or expense arising out of, resulting from, caused by, or in anyway contributed to

 a.  the manufacture of, use of, sales of, installation of, removal of, distribution of, or exposure to silica.

 b.  Arising out of any obligation to defend any "suit" or "claim" against the insured alleging "bodily injury", "property damage", " personal injury" or "advertising injury" and seeking damages, if such suit or claim arises from "bodily injury", "property damage", "personal injury", or "advertising injury" resulting from or contributed by any form of silica.

The term "silica" shall mean any solid, liquid, or gaseous material consisting of or containing silica or silica fibers or particles, or silica dust.

All other terms and conditions remain unchanged.



**EXCESS/UMBRELLA**

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## INTELLECTUAL PROPERTY HAZARD EXCLUSION

In consideration of the premium charged it is hereby understood and agreed that this policy shall not apply to the "ultimate net loss" from any loss, cost and/or expense arising out of, in connection with or to, resulting from, or contributed by the "intellectual property hazard".

For the purposes of this insurance the term "intellectual property hazard" shall mean:

Any common law or statutory claim, suit or administrative proceeding in any way relating to or arising out of patent infringement, trademark infringement, trade dress infringement, infringement of copyright, title or slogan, misappropriation of advertising ideas or style of doing business, disparagement of a person's or organization's goods, products, or services, unfair competition, trade libel or slander, violation of the right of privacy, theft of intellectual property, theft of trade secrets, or market share agreements.

All other terms and conditions remain unchanged.

MEU 5405 02 05

Page 1 of 1



EXCESS/UMBRELLA

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## COMPUTER-RELATED AND COMPUTER RELATED WORK EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that this policy shall not apply to "Ultimate Net Loss" for any loss, cost and/or expense arising out of, resulting from, caused by, or in anyway contributed to by:

1.  Any actual or alleged failure, malfunction or inadequacy of:

    a.  Any of the following, whether belonging to any insured or to others:

        (1)  Computer hardware, including microprocessors;

        (2)  Computer application software;

        (3)  Computer operating systems and related software;

        (4)  Computer networks;

        (5)  Microprocessors (computer chips) not part of any computer system; or

        (6)  Any other computerized or electronic equipment or components; or

    b.  Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in part 1. Above

        due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

2.  Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph 1. above.

All other terms and conditions remain unchanged.

**EXCESS/UMBRELLA**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRIOR INCIDENT(S) AND PRIOR CONSTRUCTION DEFECTS EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that no insurance coverage is provided under this policy to defend or indemnify any insured for "Ultimate Net Loss" which has first occurred or begun prior to the effective date of this policy, regardless of whether repeated or continued exposure to conditions which were a cause of such "Ultimate Net Loss" occur during the period of this policy and cause additional, progressive or further "Ultimate Net Loss", all of which is excluded from coverage.

This exclusion shall apply whether or not the insured's legal obligation to pay damages has been established as of the inception date of this policy.

If this policy is renewed or extended by us for more than one annual period the most we will pay for "Ultimate Net Loss", arising from a claim which first occurred during one of the policy periods is the applicable limit of insurance available for the policy during which the injury or damage first occurred, regardless of whether such injury or exposure to it existed before or continues after the policy period in which it first occurred.

All other terms and conditions remain unchanged.

EXCESS/UMBRELLA



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CROSS SUITS EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that this policy shall not apply to "Ultimate Net Loss" for any loss, cost and/or expense arising out of, resulting from, caused by, or in anyway contributed to by any Named Insured covered by this policy initiating causes of action or allegations against any other Named Insured covered by this policy.

All other terms and conditions remain unchanged.



EXCESS/UMBRELLA

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EMPLOYMENT PRACTICES LIABILITY EXCLUSION

In consideration of the premium charged it is hereby understood and agreed that this policy shall not apply to the "Ultimate Net Loss" for any loss, cost, and/or expense arising out of, resulting from, in anyway contributed by, or in connection with any negligent Error or Omission resulting in loss to:

    a.   Refusal to employ;

    b.   Termination of employment;

    c.   Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or employment-related practices, policies, acts, or omissions; or

    d.   Consequential "bodily injury," "property damage," "personal injury," or "advertising injury" as a result of a., b., or c. above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of such "bodily injury," "property damage," "personal injury," or "advertising injury."

All other terms and conditions remain unchanged.



EXCESS/UMBRELLA

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BLAST FAXING EXCLUSION

**Violation of statutes that govern e-mails, fax, phone calls, or other methods of sending, or distributing material, or information.**

In consideration of the premium charged, it is hereby understood and agreed that this policy shall not apply to the "Ultimate Net Loss" for any loss, cost, or expense caused by, relating to, contributed by, arising directly or indirectly out of any action or omission that violates or is alleged to violate.

   a)   The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

   b)   The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

   c)   Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

All other terms and conditions remain unchanged.

MEU 5445 04 05



**EXCESS/UMBRELLA**

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION OF CERTIFIED ACTS OF TERRORISM

**A** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms and conditions remain unchanged.



EXCESS/UMBRELLA
POLICY NUMBER: XONJ523313

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DESIGNATED PREMISES LIMITATION

This policy shall only apply to "Ultimate Net Loss" arising out of operations at the following designated premises only:

**Loc. #01 - 675 Massachusetts Avenue 10th, Cambridge, MA  02139**
**Loc. #02 - 920 Santa Monica Blvd., Santa Monica, CA  90401**
**Loc. #03 - 800 Market Street, 7th Floor, San Francisco, CA  94102**
**Loc. #04 - 1712 N. Street NW, Suite 101, Washington, DC  20036**
**Loc. #05 - 230 West Superior, Suite 200, Chicago, IL  60654**
**Loc. #06 - 33 Nassau Ave., Suite 2, Brooklyn, NY  11222**
**Loc. #07 - 1808 Bellevue Ave., Ste. 201, Seattle, WA  98122**
**Loc. #08 - 405 Howard Street, 5th Floor, San Francisco, CA**
**Loc. #09 - 1062 Delaware St., Denver, CO  80204**
**Loc. #10 - 1650 Arch St., Ste. 1906, Philadelphia, PA**
**Loc. #11 - 2919 Commerce Street, Dallas, TX**
**Loc. #12 - 1729 21st Street NW, Washington, DC  20009**

All other terms and conditions remain unchanged.

**EXCESS/UMBRELLA**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRODUCTS RECALL EXCLUSION

In consideration of the premium charged it is hereby understood and agreed that this policy shall not apply to "Ultimate Net Loss" arising out of damages claimed for all loss, costs or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of "your product," "your work," or "impaired property" if such work or property is withdrawn or recalled from the market or from use by a person or organization due to a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

All other terms and conditions remain unchanged.

**MEU 6095 10 98**

EXCESS/UMBRELLA



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## UNIMPAIRED AGGREGATE ENDORSEMENT



It is agreed that if any policy listed on the Schedule of Underlying Insurance has an aggregate limit of liability, such aggregate limit shall not, for the purpose of determining when this insurance applies, be reduced or exhausted by any payment or costs associated with claims or suits which are not covered by this policy.

All other terms and conditions remain unchanged.

EXCESS/UMBRELLA



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NON-STACKING OR NON-PYRAMIDING OF LIMITS ENDORSEMENT



In consideration of the premium charged it is hereby understood and agreed that any loss, cost, or expense that is provided for or covered under this policy shall not be provided for or covered under any existing, current, subsequent, replacement or renewal policy or policies, or extensions.

All other terms and conditions remain unchanged.

**MEU 7064 01 09**                                    Page 1 of 1

EXCESS/UMBRELLA



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NON-DROP DOWN PROVISION

In consideration of the premium charged it is hereby understood and agreed that the aggregate limit of liability of any underlying insurance as set forth in Item 4 of the Declarations shall not be reduced by "Ultimate Net Loss" as respects coverage excluded hereunder. It shall be the insured's sole responsibility to provide other insurance or self-insurance for any impairment of the underlying aggregate limit as a result of the "Ultimate Net Loss".

All other terms and conditions remain unchanged.



EXCESS/UMBRELLA

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AUTO LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

OCCURRENCE EXCESS LIABILITY POLICY

In consideration of the premium charged, it is hereby understood and agreed that this policy shall not apply to "Ultimate Net Loss" for any loss, cost and/or expense arising out of, resulting from, caused by, or in any way contributed to the ownership, maintenance, use, or entrustment to others of any auto:

**1.** While away from premises you own, rent, or occupy; or

**2.** Owned by or rented or loaned to any insured.

As used in this limitation, use includes operation and loading or unloading.

However, this limitation endorsement shall not apply except to the extent that coverage is provided by a policy or policies shown on the Schedule of Underlying Insurance and then only to the extent that coverage is provided by such policy or policies.

All other terms and conditions remain unchanged.

**MEUB 2300 02 11**                                                                                          **Page 1 of 1**



**EXCESS/UMBRELLA**

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PERSONAL AND ADVERTISING INJURY EXCLUSION

This endorsement modifies insurance provided under this policy:

The Exclusions section of the policy is amended and the following is added:

The coverage under this policy does not apply to claims arising out of "personal injury" and/or "advertising injury" as defined in the underlying comprehensive general liability policy.

All other terms and conditions remain unchanged.

**EXCESS/UMBRELLA**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CYBER RISK EXCLUSION

This endorsement modifies insurance provided under this policy:

The Exclusions section of the policy is amended and the following is added:

This policy does not apply to "Ultimate Net Loss" or any other liability or damages arising, directly or indirectly, out of the loss of, alteration of, or damage to any information/ data transmission mechanism, electronic information, or computer software of any kind.  Including microchips, microprocessors, integrated circuits, or any other internal or external computer related devices, any computer hardware, computer system, computer network, or the internet, or to any other similar devices or systems of the kind described herein.

All other terms and conditions remain unchanged.

**INTERLINE**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

CHANGE NUMBER: 1

| POLICY NUMBER:<br><br>XONJ523313 | POLICY CHANGES<br>EFFECTIVE:<br>10/17/2013 | COMPANY:<br><br>EVANSTON INSURANCE<br>COMPANY |
|---|---|---|
| NAMED INSURED:<br><br>UBER TECHNOLOGIES, INC. | AUTHORIZED REPRESENTATIVE | |
| COVERAGE PART(S) AFFECTED: | | |

The following item(s):

| | | | | | |
|---|---|---|---|---|---|
| ☐ | Insured's Name/Additional Named Insureds | ☐ | Insured's Mailing Address | ☐ | Policy Number |
| ☐ | Effective/Expiration Date/Policy Period | ☐ | Company | ☐ | Locations/Location Description |
| ☐ | Insured's Legal Status/Business Description | ☐ | Minimum Earned Premium | ☐ | Rates |
| ☐ | Coverage Forms and Endorsements | ☐ | Policy Cancel/Reinstatement | ☐ | Limits/Exposures/Premium Basis |
| ☐ | Additional Insureds, Loss Payees, Mortgagees | ☐ | Buildings/Personal Property | ☐ | Deductibles |
| ☐ | Aggregate Cap | ☐ | Classification/Class Codes | ☒ | Underlying Insurance Information |
| ☐ | Per Vehicle Limit | ☐ | Vehicle | ☐ | Drivers |
| ☐ | Vehicle Description (Type/Year/Make/Model/<br>Vehicle Identification Number/Cost New/Value) | ☐ | Equipment | ☐ | Other (describe below) |

is (are) ☐ changed  ☒ added  ☐ deleted as shown below:

It is hereby understood and agreed that the following Foreign Liability policy has been added to the Schedule of Underlying Insurance:

Carrier: WorldSource; Effective: 4/19/2013 – 4/19/2014; Limits - GL: $1m/$2m; AL: $1m CSL, EL: $1m/$1m/$1m

The above amendments result in a change in the premium as follows:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ | **NO CHANGES** | ☐ | **TO BE ADJUSTED AT AUDIT** | ☒ | **ADDITIONAL PREMIUM** ▬▬▬ | ☐ | **RETURN PREMIUM $** |
| ☐ | **NO RETURN PREMIUM – CLAIM STILL IN PROCESS** | ☐ | **NO RETURN PREMIUM – TOTAL LOSS TO INSURED ITEM** | ☐ | **NO RETURN PREMIUM – FULLY EARNED PROVISION APPLIES** | ☐ | **OTHER (DESCRIBE):** |

All other terms and conditions remain unchanged.

*Gerard Albonese Jr*

AUTHORIZED REPRESENTATIVE

INTERLINE

**MARKEL**®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## POLICY CHANGES

CHANGE NUMBER: 2

| POLICY NUMBER: XONJ523313 | POLICY CHANGES EFFECTIVE: 02/13/2014 | COMPANY: EVANSTON INSURANCE COMPANY |
|---|---|---|
| NAMED INSURED: UBER TECHNOLOGIES, INC. | AUTHORIZED REPRESENTATIVE 0032G CRC\|Crump | |
| COVERAGE PART(S) AFFECTED: | | |

The following item(s):

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ | Insured's Name/Additional Named Insureds | ☒ | Insured's Mailing Address | ☐ | Policy Number | | |
| ☐ | Effective/Expiration Date/Policy Period | ☐ | Company | ☐ | Locations/Location Description | | |
| ☐ | Insured's Legal Status/Business Description | ☐ | Minimum Earned Premium | ☐ | Rates | | |
| ☐ | Coverage Forms and Endorsements | ☐ | Policy Cancel/Reinstatement | ☐ | Limits/Exposures/Premium Basis | | |
| ☐ | Additional Insureds, Loss Payees, Mortgagees | ☐ | Buildings/Personal Property | ☐ | Deductibles | | |
| ☐ | Aggregate Cap | ☐ | Classification/Class Codes | ☐ | Underlying Insurance Information | | |
| ☐ | Per Vehicle Limit | ☐ | Vehicle | ☐ | Drivers | | |
| ☐ | Vehicle Description (Type/Year/Make/Model/ Vehicle Identification Number/Cost New/Value) | ☐ | Equipment | ☐ | Other (describe below) | | |

is (are) ☒ changed  ☐ added  ☐ deleted as shown below:

Amended the Insured's mailing address to read as: 706 Mission, 9th Floor, San Francisco, CA  94103

The above amendments result in a change in the premium as follows:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ | **NO CHANGES** | ☐ | **TO BE ADJUSTED AT AUDIT** | ☐ | **ADDITIONAL PREMIUM $** | ☐ | **RETURN PREMIUM $** |
| ☐ | **NO RETURN PREMIUM – CLAIM STILL IN PROCESS** | ☐ | **NO RETURN PREMIUM – TOTAL LOSS TO INSURED ITEM** | ☐ | **NO RETURN PREMIUM – FULLY EARNED PROVISION APPLIES** | ☐ | **OTHER (DESCRIBE):** |

All other terms and conditions remain unchanged.

*Gerry Albanese*

_____
Authorized Signature

**INTERLINE**

**MARKEL®**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## POLICY CHANGES

CHANGE NUMBER: 3

| POLICY NUMBER: XONJ523313 | POLICY CHANGES EFFECTIVE: 04/19/2014 | COMPANY: EVANSTON INSURANCE COMPANY |
|---|---|---|
| NAMED INSURED: UBER TECHNOLOGIES, INC. | AUTHORIZED REPRESENTATIVE | |
| COVERAGE PART(S) AFFECTED: | | |

The following item(s):

| | | | |
|---|---|---|---|
| ☐ Insured's Name/Additional Named Insureds | ☐ Insured's Mailing Address | ☐ Policy Number |
| ☒ Effective/Expiration Date/Policy Period | ☐ Company | ☐ Locations/Location Description |
| ☐ Insured's Legal Status/Business Description | ☐ Minimum Earned Premium | ☐ Rates |
| ☐ Coverage Forms and Endorsements | ☐ Policy Cancel/Reinstatement | ☐ Limits/Exposures/Premium Basis |
| ☐ Additional Insureds, Loss Payees, Mortgagees | ☐ Buildings/Personal Property | ☐ Deductibles |
| ☐ Aggregate Cap | ☐ Classification/Class Codes | ☐ Underlying Insurance Information |
| ☐ Per Vehicle Limit | ☐ Vehicle | ☐ Drivers |
| ☐ Vehicle Description (Type/Year/Make/Model/ Vehicle Identification Number/Cost New/Value) | ☐ Equipment | ☐ Other (describe below) |

is (are) ☒ changed   ☐ added   ☐ deleted as shown below:

Extended the Excess Policy Expiration Date to 06/30/2014 at 100% Minimum Earned Premium.

The above amendments result in a change in the premium as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ | NO CHANGES | ☐ | TO BE ADJUSTED AT AUDIT | ☒ | ADDITIONAL PREMIUM ▓▓▓▓▓ | ☐ | RETURN PREMIUM $ |
| ☐ | NO RETURN PREMIUM – CLAIM STILL IN PROCESS | ☐ | NO RETURN PREMIUM – TOTAL LOSS TO INSURED ITEM | ☐ | NO RETURN PREMIUM – FULLY EARNED PROVISION APPLIES | ☐ | OTHER (DESCRIBE): |

*Gerard Albreez jr*

AUTHORIZED REPRESENTATIVE

All other terms and conditions remain unchanged.

INTERLINE

**MARKEL**®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

CHANGE NUMBER: 4

| POLICY NUMBER:<br>XONJ523313 | POLICY CHANGES EFFECTIVE:<br>04/19/2013 | COMPANY:<br>EVANSTON INSURANCE COMPANY |
|---|---|---|
| NAMED INSURED:<br>UBER TECHNOLOGIES, INC. | AUTHORIZED REPRESENTATIVE | |
| COVERAGE PART(S) AFFECTED: | | |

The following item(s):

| | | | | | |
|---|---|---|---|---|---|
| ☐ | Insured's Name/Additional Named Insureds | ☐ | Insured's Mailing Address | ☐ | Policy Number |
| ☐ | Effective/Expiration Date/Policy Period | ☐ | Company | ☐ | Locations/Location Description |
| ☐ | Insured's Legal Status/Business Description | ☐ | Minimum Earned Premium | ☐ | Rates |
| ☒ | Coverage Forms and Endorsements | ☐ | Policy Cancel/Reinstatement | ☐ | Limits/Exposures/Premium Basis |
| ☐ | Additional Insureds, Loss Payees, Mortgagees | ☐ | Buildings/Personal Property | ☐ | Deductibles |
| ☐ | Aggregate Cap | ☐ | Classification/Class Codes | ☐ | Underlying Insurance Information |
| ☐ | Per Vehicle Limit | ☐ | Vehicle | ☐ | Drivers |
| ☐ | Vehicle Description (Type/Year/Make/Model/ Vehicle Identification Number/Cost New/Value) | ☐ | Equipment | ☒ | Other (describe below) |

is (are) ☐ changed  ☒ added  ☐ deleted as shown below:

Added the form MEU 5433 11 02 Designated Entity/Operations Exclusion to the policy.

The above amendments result in a change in the premium as follows:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ | **NO CHANGES** | ☐ | **TO BE ADJUSTED AT AUDIT** | ☐ | **ADDITIONAL PREMIUM $** | ☐ | **RETURN PREMIUM $** |
| ☐ | **NO RETURN PREMIUM – CLAIM STILL IN PROCESS** | ☐ | **NO RETURN PREMIUM – TOTAL LOSS TO INSURED ITEM** | ☐ | **NO RETURN PREMIUM – FULLY EARNED PROVISION APPLIES** | ☐ | **OTHER (DESCRIBE):** |

*Gerard Albanese Jr*

AUTHORIZED REPRESENTATIVE

All other terms and conditions remain unchanged.



EXCESS/UMBRELLA
POLICY NUMBER: XONJ523313

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DESIGNATED ENTITY(S) AND/OR OPERATION(S) EXCLUSION

This policy shall not apply to "Ultimate Net Loss" arising out of, caused by, or contributed in any way by the below listed entity(s) and/or their operation(s):

Rasier;

**Rasier LLC**

All other terms and conditions remain unchanged.