David E. Weiss (SBN 148147)
Email:      dweiss@reedsmith.com
Cristina M. Shea (SBN 179895)
Email:      cshea@reedsmith.com
Melissa A. Meth (SBN 263571)
Email:      mmeth@reedsmith.com
Rebecca L. Gindi (SBN 300523)
Email:      rgindi@reedsmith.com
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA  94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Attorneys for Defendant and Counterclaimant
Uber Technologies, Inc., and Counterclaimants
Rasier LLC and Rasier-CA LLC

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANSTON INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 4:15-cv-03988-KAW<br><br>**DEFENDANT UBER TECHNOLOGIES, INC.'S ANSWER TO COMPLAINT AND COUNTERCLAIMANTS UBER TECHNOLOGIES, INC., RASIER LLC, AND RASIER-CA LLC'S COUNTERCLAIM**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Magistrate Judge Kandis A. Westmore |
| UBER TECHNOLOGIES, INC., RASIER LLC, RASIER-CA LLC,<br><br>Counterclaimants,<br><br>EVANSTON INSURANCE COMPANY; FIRST MERCURY INSURANCE COMPANY,<br><br>Counterdefendants. | |

## ANSWER

Defendant Uber Technologies, Inc. ("Uber"), as its Answer to the Complaint of Evanston

Insurance Company ("Evanston") hereby states as follows:

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**INTRODUCTION**

1.      There is no factual information in this paragraph for Defendant to either admit or deny, rather this paragraph sets forth Evanston's position as to the relief it seeks by way of this lawsuit.  In any event, Defendant denies that Evanston is entitled to the requested relief specified in this paragraph.

**THE PARTIES**

2.      Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.

3.      Admitted.

**JURISDICTION AND VENUE**

4.      There is no factual information in this paragraph for Defendant to either admit or deny, rather this paragraph sets forth Evanston's position as to the purpose for its lawsuit.

5.      Admitted.

6.      Admitted.

**THE UNDERLYING *LIU* LAWSUIT**

7.      This paragraph appears to contain a summary of the allegations of the plaintiffs in the underlying lawsuit entitled *Liu v. Uber Technologies, Inc.*, San Francisco County Superior Court Case No. CGC 14 53697 (the "*Liu* Action").  The allegations in the *Liu* Action speak for themselves and any characterization or attempted summary of those allegations is denied.

8.      It is admitted that the *Liu* Action was filed on January 27, 2014.  The allegations in the *Liu* Action speak for themselves and any characterization of those allegations is denied.

9.      Admitted.

10.     Admitted but the content of Evanston's letter to Uber speaks for itself and any characterization of the letter or the propriety of Evanston's actions is denied.

11.     It is admitted that the *Liu* Action has settled and that Uber seeks coverage from Evanston for the settlement.  The terms of the settlement, including its amount, were ordered sealed by the Court in the *Liu* Action.  The Request for Dismissal speaks for itself.

/ / /

**THE EVANSTON POLICY**

12.     It is admitted that Evanston issued the referenced policy.

13.     Denied.  The provisions of the Evanston policy speak for themselves, must be read in their entirety, and any characterization of those provisions is denied.

14.     Denied.  The provisions of the National Union policies and the Evanston policy speak for themselves, must be read in their entirety, and any characterization of those provisions is denied.

15.     Denied.  The provisions of the Evanston policy speak for themselves, must be read in their entirety, and any characterization of those provisions is denied.

16.     Denied.  The provisions of the Evanston policy speak for themselves, must be read in their entirety, and any characterization of those provisions is denied.

17.     Denied.  The provisions of the Evanston policy speak for themselves, must be read in their entirety, and any characterization of those provisions is denied.

18.     Denied.  The provisions of the Evanston policy speak for themselves, must be read in their entirety, and any characterization of those provisions is denied.

19.     Denied.  The provisions of the Evanston policy speak for themselves, must be read in their entirety, and any characterization of those provisions is denied.

**THE NATIONAL UNION COMMERCIAL GENERAL LIABILITY INSURANCE**

**CONTRACT**

20.     Denied.  The provisions of the National Union Commercial General Liability policy speak for themselves, must be read in their entirety, and any characterization of those provisions is denied.

21.     Denied.  The provisions of the National Union Commercial General Liability policy speak for themselves, must be read in their entirety, and any characterization of those provisions is denied.

22.     Denied.  The provisions of the National Union Commercial General Liability policy speak for themselves, must be read in their entirety, and any characterization of those provisions is denied.

/ / /

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 3 –

**THE NATIONAL UNION BUSINESS AUTOMOBILE POLICY**

23.     Denied.  The provisions of the National Union Business Automobile policy speak for themselves, must be read in their entirety, and any characterization of those provisions is denied.

24.     Denied.  The provisions of the National Union Business Automobile policy speak for themselves, must be read in their entirety, and any characterization of those provisions is denied.

25.     Denied.  The provisions of the National Union Business Automobile policy speak for themselves, must be read in their entirety, and any characterization of those provisions is denied.

26.     Denied.  The provisions of the National Union Business Automobile policy speak for themselves, must be read in their entirety, and any characterization of those provisions is denied.

27.     Denied.  The provisions of the National Union Business Automobile policy speak for themselves, must be read in their entirety, and any characterization of those provisions is denied.

**THE APPLICATION AND ISSUANCE OF THE POLICY**

28.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.  Further, all communications regarding the application and issuance of the Evanston policy must be read in their entirety and not characterized, summarized and/or taken out of context.

29.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.  Further, all communications regarding the application and issuance of the Evanston policy must be read in their entirety and not characterized, summarized and/or taken out of context.

30.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.  Further, all communications regarding the application and issuance of the Evanston policy must be read in their entirety and not characterized, summarized and/or taken out of context.

31.     It is admitted that the Evanston policy initially was issued for a one year policy period from April 19, 2013 until April 19, 2014, but otherwise the allegations in this paragraph are denied.

32.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.  Further, all communications

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

ANSWER TO COMPLAINT; COUNTERCLAIM; DEMAND FOR JURY TRIAL

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  regarding the application and issuance of the Evanston policy must be read in their entirety and not

2  characterized, summarized and/or taken out of context.

3       33.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of

4  the allegations in this paragraph and on that basis denies them.  Further, all communications

5  regarding the application and issuance of the Evanston policy must be read in their entirety and not

6  characterized, summarized and/or taken out of context.

7       34.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of

8  the allegations in this paragraph and on that basis denies them.  Further, all communications

9  regarding the application and issuance of the Evanston policy must be read in their entirety and not

10  characterized, summarized and/or taken out of context.

11       35.     Denied.  The provisions of the Evanston policy speak for themselves, must be read in

12  their entirety, and any characterization of those provisions is denied.

13       36.     Denied.

14       37.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of

15  the allegations in this paragraph and on that basis denies them.

16       38.     Admitted.

17  ## FIRST CAUSE OF ACTION
18  ### (Declaratory Relief)

19       39.     Uber's responses to paragraphs 1-38 are hereby incorporated.

20       40.     Admitted.

21       41.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of

22  Evanston's contentions set forth in this paragraph and on that basis denies them.  Defendant denies

23  that Evanston does not owe any obligation to defend or indemnify Uber with respect to the

24  Underlying Lawsuit.

25       42.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of

26  Evanston's assertions and contentions set forth in this paragraph and on that basis denies them.

27  Defendant denies that declaratory judgment is necessary and/or proper in favor of Evanston.

28  / / /

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## RESPONSE TO PRAYER FOR RELIEF

Uber denies that Evanston is entitled to the relief sought, or to any relief whatsoever.  Uber respectfully requests that judgment be entered in Uber's favor.

## AFFIRMATIVE DEFENSES

As separate and affirmative defenses, Defendant alleges as follows:

## FIRST AFFIRMATIVE DEFENSE

1.     Plaintiffs fail to allege sufficient facts to state any claim for which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

2.     Plaintiffs' claims are barred by the doctrine of laches.

## THIRD AFFIRMATIVE DEFENSE

3.     Plaintiffs' claims are barred by the equitable doctrine of estoppel.

## FOURTH AFFIRMATIVE DEFENSE

4.     Plaintiffs' claims are barred by the doctrine of waiver.

## FIFTH AFFIRMATIVE DEFENSE

5.     Plaintiffs' claims are barred by the doctrine of unclean hands.

## SIXTH AFFIRMATIVE DEFENSE

6.     Evanston bears the burden to prove the applicability of any exclusion to coverage and Evanston cannot prove the applicability of any exclusion to coverage.

## SEVENTH AFFIRMATIVE DEFENSE

7.     Evanston's claim is barred for the reasons set forth in Uber's counterclaim, which is set forth below and incorporated herein by reference.

## EIGHTH AFFIRMATIVE DEFENSE

8.     Evanston's claim is barred due to its own breach of the insurance agreement.

## NINTH AFFIRMATIVE DEFENSE

9.     Evanston's claim is barred because it is in breach of the policies and is precluded from relying on policy provisions in order to deny coverage thereunder.

/ / /

**TENTH AFFIRMATIVE DEFENSE**

10.     To the extent that Evanston's interpretation of the Evanston policy as currently written is determined to be correct, then through mutual mistake or Evanston's inequitable conduct, the Evanston policy as currently written does not reflect the mutual agreement of the parties and must be reformed in accordance with the parties' agreement.

**ELEVENTH AFFIRMATIVE DEFENSE**

11.     Defendant has insufficient knowledge or information upon which to form a belief as to whether it may have additional affirmative defenses available.  Defendant expressly reserves the right to assert additional affirmative defenses in the event that discovery indicates that such defenses are appropriate.

**COUNTERCLAIM**

Counterclaimants Uber Technologies, Inc. ("Uber"), Rasier LLC ("Rasier"), and Rasier-CA LLC ("Rasier-CA") (collectively "Counterclaimants") assert and allege counterclaims against Counterdefendants Evanston Insurance Company ("Evanston") and First Mercury Insurance Company ("First Mercury") as follows:

**NATURE OF THE ACTION**

1.     This action arises out of Evanston's and First Mercury's wrongful and bad faith denial of their insurance coverage obligations in connection with two lawsuits filed against Counterclaimants entitled *Liu v. Uber Technologies, Inc.*, San Francisco County Superior Court Case No. CGC 14 536979 (the "*Liu* Action") and *Booker Page v. Mark Dawson, et al.; Dawson, et al. v. Uber Technologies, Inc.*, San Francisco Superior Court Case No. CGC-14-537297 (the "*Page* Action").

**PARTIES**

2.     Counterclaimant Uber Technologies Inc. ("Uber") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in San Francisco, CA.

3.     Counterclaimant Rasier LLC ("Raiser") is a Delaware Limited Liability Company

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

that is a wholly-owned subsidiary of Uber Technologies, Inc.

4. Counterclaimant Rasier-CA LLC ("Raiser-CA") is a Delaware Limited Liability Company that is a wholly-owned subsidiary of Rasier.

5. On information and belief, Counterdefendant Evanston Insurance Company ("Evanston") is a corporation in the insurance business, which has its principle place of business in Illinois. On information and belief, Evanston is identified on the List of Approved Surplus Lines Insurers in California.

6. On information and belief, Counterdefendant First Mercury Insurance Company ("First Mercury") is a corporation in the insurance business with its principle place of business in Illinois. On information and belief, First Mercury is identified on the List of Approved Surplus Lines Insurers in California.

## JURISDICTION AND VENUE

7. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over Evanston and First Mercury by virtue of their business activities within California, including their sale of insurance to Uber in the State of California.

9. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391, as a substantial portion of the events giving rise to this Complaint occurred, and continue to occur, in San Francisco, California.

## FACTUAL ALLEGATIONS

**Uber's Business**

10. Uber is a San Francisco-based software technology company. It has developed a smartphone application (the "Uber App") that enables users to request transportation services from independent, third-party transportation providers.

11. Uber itself does not provide transportation services and is not a transportation carrier. It does not own vehicles or employ drivers.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

12.     Uber licenses the use of its application to riders and independent transportation providers for a fee.

13.     Rasier, a wholly-owned subsidiary of Uber, licenses the driver version of the UberDriver App from Uber and, in turn, sub-licenses the driver version of the Uber App to independent third-party transportation providers who offer peer-to-peer ridesharing services requested through the Uber App by riders.

14.     Rasier does not own or physically operate any vehicles.  Rather, ridesharing drivers provide their own vehicles to provide their services, which can be requested and hired through the Uber App.

15.     Rasier-CA is a wholly-owned subsidiary of Rasier formed to do business in California and to hold any necessary regulatory license within the state of California.  Rasier-CA does not operate any vehicles, and instead licenses the driver version of the Uber App to drivers.

**Uber's Insurance Policies**

16.     Uber purchased insurance coverage to protect itself and its subsidiary companies against liabilities or potential liabilities for accidents or injuries arising from their business operations.

17.     Uber purchased two primary policies from National Union Fire Insurance Company of Pittsburgh, PA ("National Union") for the policy period April 19, 2013 to June 30, 2014.  Policy No. 536-15-39 is a Commercial General Liability policy, with per occurrence primary limits of $1 million, a general aggregate limit of $2 million, and a $2 million limit for "products/completed operations" ("National Union CGL policy").  Policy No. 230-49-85 is a Business Auto policy that provides coverage for hired and non-owned automobiles, with a $1 million "combined single limit" of liability ("National Union Auto policy").

18.     Uber is a Named Insured on the National Union Auto policy.  By virtue of an endorsement to the policy, Rasier and Rasier-CA are also Named Insureds on the National Union Auto policy.

19.     Evanston issued Policy No. XONJ523313 (the "Evanston policy") to Uber as the Named Insured for policy period April 19, 2013 through June 30, 2014.  Raiser and Raiser-CA are

ANSWER TO COMPLAINT; COUNTERCLAIM; DEMAND FOR JURY TRIAL

also insured under the Evanston policy.

20.     The Evanston policy contains limits of insurance for "each occurrence" and in the aggregate "where applicable," in excess of the two National Union policies. There is no aggregate limit for automobile liability claims. The Evanston policy follows form to the coverage provided by the National Union CGL policy and the National Union Auto policy. The Schedule of Underlying Insurance in the Evanston policy states that the National Union CGL policy provides "Commercial General Liability" coverage, including coverage for "products/completed operations," and the National Union Auto policy provides "Hired and Non-Owned Automobile Liability" coverage.

21.     Uber paid premiums for the Evanston policy for an initial term and a seventy-two day extension of the policy. The premium payment for the extension was significantly more than the initial premium payment, primarily due to coverage for exposures of the type alleged in the *Liu* case.

22.     First Mercury issued Policy No. NY-EX-0000029024-01 (the "First Mercury policy") to Uber as the Named Insured for policy period May 24, 2013 through June 30, 2014, with limits of insurance per occurrence and in the aggregate, including coverage for "products-completed operations." The aggregate limit does not apply to automobile liability claims.

23.     The First Mercury policy is excess to the National Union CGL policy, the National Union Auto policy, and the Evanston policy, as applicable, and defines each as "controlling underlying insurance."

24.     Uber paid premiums for the First Mercury policy for an initial term and a seventy-two day extension of the policy. The premium payment for the extension was significantly more than the initial premium payment, primarily due to coverage for exposures of the type alleged in the *Liu* case.

25.     The Evanston policy and the First Mercury policy are sometimes collectively referred to herein as the Excess Policies.

**The Underlying Litigation**

26.     Counterclaimants were named as defendants in the *Liu* Action and in the *Page* Action. The plaintiffs in the *Liu* and *Page* Actions sought damages due to bodily injuries allegedly caused by the use of the Uber App. Uber provided notice of these lawsuits to Evanston and First

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Mercury, and both insurers denied coverage for these claims and refused to participate in efforts to resolve the *Liu* Action or the *Page* Action.  Thereafter, the *Liu* and the *Page* Actions were settled without any assistance or contribution from Evanston or First Mercury, despite Uber's requests for their participation.

### **The *Liu* Action**

27.     The *Liu* Action involves events that took place on December 31, 2013.  According to the allegations in the complaint, Huan Kang was walking home with her two children, Anthony Liu and Sofia Liu, when they were struck by a car driven by Syed Muzafar.

28.     The Liu family filed suit against Uber, Rasier, Rasier-CA, and Syed Muzafar on January 24, 2014.  The plaintiffs alleged that Mr. Muzafar was logged on to the Uber App at the time of the accident.

29.     The plaintiffs asserted nine causes of action:  1) wrongful death; 2) negligence – motor vehicle; 3) negligent infliction of emotional distress; 4) negligence; 5) negligence per se; 6) strict products liability – bystander theory, in which the plaintiffs allege that the Uber App was defective and that as a proximate result of the product defect, the claimants had suffered significant damages; 7) negligent hiring, retention, training and supervision; 8) loss of consortium; 9) wrongful death – survival action.

30.     The *Liu* claimants sought damages in excess of the limits of the underlying National Union CGL policy and National Union Auto policy.

### **The *Page* Action**

31.     The *Page* Action arises out of events that took place on September 15, 2013. According to the allegations in the complaint, Booker Page suffered injuries when he allegedly was struck by a DeSoto taxi cab driven by Mark Dawson while Mr. Page was crossing the street outside the crosswalk and against the traffic light.  Mr. Page alleges that Mr. Dawson was utilizing the Uber App at the time of the incident.

32.     Mr. Page, by and through his Guardian ad Litem Youlanda Williams, filed suit against Mr. Dawson and the DeSoto Cab Company on February 7, 2014 seeking damages for wage loss, hospital and medical expenses, general damages, property damage, and loss of earnings.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

33.     Mr. Dawson and the DeSoto Cab Company filed a Cross-Complaint against Uber on June 11, 2014, alleging that Mr. Dawson was responding to an Uber call at the time of the accident, and asserting claims for:  1) implied indemnity/equitable indemnity; 2) apportionment of fault; and 3) declaratory relief.

34.     Thereafter, the plaintiff amended his complaint to replace fictitious Doe defendants with Uber and Rasier.

35.     Mr. Page sought damages in excess of the limits of the underlying National Union CGL policy and National Union Auto policy.

**Uber's Tender to Its Insurance Carriers**

36.     There is coverage for the *Liu* and *Page* Actions under the National Union, Evanston and First Mercury policies.  Therefore, Uber tendered the *Liu* and *Page* Actions to each of the three insurance carriers.

37.     For both the *Liu* and *Page* Actions, National Union accepted coverage for Uber and Rasier/Rasier-CA under the National Union Auto policy.

**The Excess Carriers' Denial of Coverage**

38.     Even though the claim is covered by primary insurance to which the Evanston policy follows form, Evanston denied coverage for both underlying lawsuits.  Evanston acknowledges that the Evanston policy provides follow form excess insurance, and specifically identifies the National Union Auto policy for "Hired and Non-Owned Automobile Liability" as an underlying policy. However, Evanston contends that its policy does not apply to claims involving automobiles, except for when the underlying incident occurs on Uber's business premises.  Evanston asserts that its policy only covers Uber for its technology operations, and not claims related to so-called "livery operations," ignoring the fact that both the *Liu* Action and the *Page* Action involve allegations regarding use of the Uber App, and the *Liu* Action specifically contains products liability causes of action against Uber.

39.     Evanston unreasonably asserts that the only coverage it provides for automobile incidents is when Uber faces liability for accidents on Uber premises, an improbable and illogical scenario.  Evanston's interpretation of its policy renders its auto liability coverage illusory.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Evanston also takes the unreasonable position that even though it specifically agreed to insure Uber, a company whose primary business is the development and distribution of an application to be used by independent drivers to facilitate the provision of transportation services in automobiles, its policy does not cover Uber for any claims relating to the use of the application, including claims alleging that the application was defective when used in its intended manner.  Rather, Evanston takes the unreasonable position that its policy, for which Uber paid substantial premiums, is limited to premises liability, such as slip and fall accidents at Uber's business locations.

40.    Relying on selective correspondence that has been taken out of context, Evanston contends that its narrow position regarding coverage is supported by communications that took place between Evanston representatives and insurance brokers who assisted in placing the Evanston policy.  Evanston ignores other correspondence that supports Uber's position and which demonstrates that Evanston's reading of the policy is contrary to the insured's expectations and the parties' intentions regarding coverage.  Specifically, Evanston ignores communications between the parties which demonstrates that the parties did not intend for the Automobile Limitation endorsement cited by Evanston to limit coverage to events occurring only on Uber's business premises.  These communications took place *after* the communications that Evanston relies on, and therefore are more relevant to determining the parties' intentions and understanding.  Additional evidence regarding the parties' understanding regarding the scope of Evanston's policy will be uncovered during the course of discovery in this action.

41.    To the extent that the wording in the Evanston policy does not reflect what the parties agreed to in their communications, it is because Evanston failed to conform the written policy to the parties' agreement and understanding.

42.    As a result of Evanston's denial of coverage for the *Liu* and *Page* Actions, First Mercury also denied coverage.  First Mercury claims that it has no duty to defend or indemnify Uber because its policy follows form to the coverage provided by Evanston.

43.    First Mercury has not made an independent coverage analysis; rather, it has adopted Evanston's coverage position.  First Mercury has not identified any exclusions in its policy that would preclude coverage.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

44.     First Mercury's position is unreasonable because, among other things, the First Mercury policy also lists the National Union Auto policy as an underlying policy.  The First Mercury policy states that "[t]here may be more than one 'controlling underlying insurance' Policy listed in the Declarations and there may be terms and provisions in those respective policies which are in conflict, and which are not superseded by the provisions of this Policy.  In such a case, the provisions, exclusions and limitations of the 'controlling underlying insurance' Policy applicable to the particular 'event' for which a claim is made or 'suit' is brought will apply."  In this case, the National Union Auto policy is the applicable policy applying to the underlying events, and therefore its terms should apply to the extent there are any conflicting terms in the Evanston policy.  Accordingly, the First Mercury policy applies even if it is determined that Evanston's coverage denial was proper.

45.     First Mercury also denied coverage claiming there has not been "exhaustion" of all applicable underlying insurance, suggesting that Evanston must actually pay its limits of coverage before First Mercury's obligations are triggered.  However, First Mercury has an obligation to indemnify Uber so long as the "ultimate net loss" exceeds the limits of the applicable underlying insurance, regardless of actual payment by the underlying insurers.  There is no requirement that the underlying insurance exhaust by actual payment before First Mercury's indemnity obligation arises.

46.     Further, if it is determined that the Evanston policy does not apply, then the First Mercury policy applies over the National Union Auto policy.  The First Mercury policy "applies in excess of the 'retained limit.'"  The "retained limit" is "the available limits of 'controlling underlying insurance'. . . applicable to the claim." (emphasis added).  The National Union Auto policy is applicable to the claim.  If it is determined that the Evanston policy does not provide coverage, then the "retained limit" is the limit of the National Union Auto policy and the First Mercury policy applies in excess of those limits.

47.     Despite Evanston and First Mercury's denial of coverage, Uber sought to resolve the coverage disputes through early mediation without resorting to litigation.  Evanston rejected Uber's request for early mediation and shortly thereafter filed its complaint for declaratory relief.  First Mercury did not respond for more than a month, and then finally rejected Uber's request after

1  Evanston filed its suit. This refusal to engage in efforts to resolve this coverage dispute without

2  resort to litigation is unreasonable and in bad faith.

3  **FIRST CLAIM FOR RELIEF – BREACH OF CONTRACT AGAINST EVANSTON**

4       48.     Counterclaimants hereby incorporate by reference the above paragraphs 1 through

5  47 as if fully set forth herein.

6       49.     Evanston committed substantial and material breaches of its contractual obligations

7  to Counterclaimants by wrongfully denying coverage for the *Liu* and *Page* Actions.

8       50.     Counterclaimants complied with all of the terms and conditions of the Evanston

9  policy and performed all other required conditions and obligations under the Evanston policy.

10      51.     Alternatively, Counterclaimants are excused from compliance with the terms and

11 conditions of the Evanston policy, and/or Evanston is estopped to assert any terms, conditions, or

12 exclusions of the Evanston policy.

13      52.     As a direct and proximate result of Evanston's breaches of the Evanston policy,

14 Counterclaimants suffered substantial monetary damages.

15      53.     Counterclaimants have also incurred, continue to incur, and will in the future incur

16 attorney's fees and expenses to prove its entitlement to coverage under the Evanston policy.

17 Evanston is liable to Counterclaimants for all such fees and expenses.

18 **SECOND CLAIM FOR RELIEF – BREACH OF THE IMPLIED COVENANT OF GOOD**

19 **FAITH AND FAIR DEALING AGAINST EVANSTON**

20      54.     Counterclaimants hereby incorporate by reference the above paragraphs 1 through

21 53 as if fully set forth herein.

22      55.     In every contract of insurance, including without exception the Evanston policy,

23 there is an implied covenant of good faith and fair dealing, that the insurance company will do

24 nothing to interfere with the right to receive benefits under the Evanston policy, that the insurer will

25 give at least as much consideration to the interests of the insured as it does its own interests, that the

26 insurer will exercise diligence, good faith, and fidelity in safeguarding the insured's interests, that it

27 will deal ethically with the insured and will fairly and adequately inform the insured with respect to

28 the nature and scope of its insurance coverage (hereinafter referred to as the "covenant of good faith

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

and fair dealing").

56.     Evanston owes Counterclaimants a duty of good faith and fair dealing implicit in the Evanston policy.

57.     Evanston breached the implied covenant of good faith and fair dealing under the Evanston policy by, *inter alia*, unreasonably and wrongfully refusing to provide coverage to Counterclaimants for the *Liu* and *Page* Actions; interpreting its policy in an unreasonable way so as to make coverage illusory, ignoring evidence to support coverage for its insured and refusing to engage in informal efforts to resolve this dispute without resorting to litigation.  Evanston's actions are also unfair claims practices in violation of California Insurance Code §790.03(h), and such violations can be used as evidence to support an action for beach of the implied covenant of good faith and fair dealing.

58.     As a proximate result of Evanston's breach of the implied covenant of good faith and fair dealing, Counterclaimants have been damaged, including without limitation being forced to settle the *Liu* and *Page* Actions without participation from Evanston or contribution from the Evanston policy for which Counterclaimants paid substantial premium.  Additionally, Counterclaimants have sustained and will continue to sustain attorney's fees and costs in this coverage action against Evanston.

59.     In breaching the implied covenant of good faith and fair dealing, Evanston has acted in a manner knowingly harmful to and/or in conscious disregard of the rights of Counterclaimants, reflecting malice and/or oppression as defined in California Civil Code Section 3294, and with deliberate intent to vex, injure, and annoy Counterclaimants so as to deprive it of its rights under the Evanston policy.  Such conduct warrants the imposition of punitive and exemplary damages in an amount sufficient to punish and make an example of Evanston in order to deter such conduct in the future.

**THIRD CLAIM FOR RELIEF – DECLARATORY JUDGMENT AGAINST EVANSTON**

60.     Counterclaimants hereby incorporate by reference the above paragraphs 1 through 59 as if fully set forth herein.

61.     Counterclaimants seek a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

ANSWER TO COMPLAINT; COUNTERCLAIM; DEMAND FOR JURY TRIAL

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    2202, of the respective rights and obligations of Counterclaimants and Evanston under the Evanston

2    policy.

3           62.    An actual case and controversy of a justiciable nature exists between

4    Counterclaimants and Evanston involving their respective rights and liabilities under the Evanston

5    policy, and dependent on the construction of the Evanston policy, which controversy may be

6    determined by declaratory judgment.

7           63.    Pursuant to the terms and conditions of the Evanston policy, Evanston is obligated to

8    provide excess coverage up to its policy limits for the *Liu* and *Page* Actions in excess of the limits of

9    applicable underlying insurance.

10          64.    Counterclaimants paid to Evanston all premiums due under the Evanston policy and

11   gave timely notice of the *Liu* and *Page* Actions to Evanston.  Counterclaimants have otherwise

12   substantially complied with all terms, provisions, and conditions of the policy.  To the extent

13   Counterclaimants have not satisfied a condition precedent to coverage, Evanston, by its conduct, has

14   either waived or should be estopped from asserting any such conditions.

15          65.    No exclusions or limitations in the Evanston policy are applicable to the *Liu* and

16   *Page* Actions.  Therefore, Evanston must provide complete coverage for any settlement or judgment

17   against Counterclaimants in the *Liu* and *Page* Actions that exceeds the limits of applicable

18   underlying insurance.

19   **FOURTH CLAIM FOR RELIEF – REFORMATION OF THE EVANSTON POLICY**

20          66.    Counterclaimants hereby incorporate by reference the above paragraphs 1 through

21   65 as if fully set forth herein.

22          67.    In the alternative, in the event the Evanston policy is found not to provide coverage

23   for the *Liu* and *Page* Actions in its current form, the Evanston policy should be reformed to reflect

24   the agreement of the parties regarding the scope of coverage.

25          68.    Prior to issuing the policy, the parties agreed that the Evanston policy would limit

26   coverage only for owned automobiles and there would be no limitation for non-owned vehicles or

27   for accidents occurring away from Uber's premises.

28          69.    Nevertheless, as a result of a mutual mistake of the parties or inequitable conduct by

Evanston, the Evanston policy as written does not reflect the intentions and understanding of the parties.

70.     The Evanston policy is capable of being reformed by this Court to reflect the true intent of the parties without any prejudice to any rights acquired by third parties.

## FIFTH CLAIM FOR RELIEF – BREACH OF CONTRACT AGAINST FIRST MERCURY

71.     Counterclaimants hereby incorporate by reference the above paragraphs 1 through 70 as if fully set forth herein.

72.     First Mercury committed substantial and material breaches of its contractual obligations to Counterclaimants by wrongfully denying coverage for the *Liu* and *Page* Actions.

73.     Counterclaimants complied with all of the terms and conditions of the First Mercury policy and performed all other required conditions and obligations under the First Mercury policy.

74.     Alternatively, Counterclaimants are excused from compliance with the terms and conditions of the First Mercury policy, and/or First Mercury is estopped to assert any terms, conditions, or exclusions of the First Mercury policy.

75.     As a direct and proximate result of First Mercury's breaches of the First Mercury policy, Counterclaimants suffered substantial monetary damages.

76.     Counterclaimants have also incurred, continue to incur, and will in the future incur attorney's fees and expenses to prove its entitlement to coverage under the First Mercury policy. First Mercury is liable to Counterclaimants for all such fees and expenses.

## SIXTH CLAIM FOR RELIEF – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST FIRST MERCURY

77.     Counterclaimants hereby incorporate by reference the above paragraphs 1 through 76 as if fully set forth herein.

78.     In every contract of insurance, including without exception the First Mercury policy, there is an implied covenant of good faith and fair dealing, that the insurance company will do nothing to interfere with the right to receive benefits under the First Mercury policy, that the insurer will give at least as much consideration to the interests of the insured as it does its own interests, that the insurer will exercise diligence, good faith, and fidelity in safeguarding the insured's interests,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  that it will deal ethically with the insured and will fairly and adequately inform the insured with

2  respect to the nature and scope of its insurance coverage (hereinafter referred to as the "covenant of

3  good faith and fair dealing").

4       79.     First Mercury owes Counterclaimants a duty of good faith and fair dealing implicit

5  in the First Mercury policy.

6       80.     First Mercury breached the implied covenant of good faith and fair dealing under the

7  First Mercury policy by, *inter alia*, unreasonably and wrongfully refusing to provide coverage to

8  Counterclaimants for the *Liu* and *Page* Actions; ignoring key terms of its own policy; refusing to

9  engage in informal efforts to resolve this dispute without resorting to litigation and by refusing to

10  conduct an independent coverage analysis, relying exclusively on Evanston's wrongful coverage

11  positions.  First Mercury's actions are also unfair claims practices in violation of California

12  Insurance Code §790.03(h), and such violations can be used as evidence to support an action for

13  beach of the implied covenant of good faith and fair dealing.

14       81.     As a proximate result of First Mercury's breach of the implied covenant of good

15  faith and fair dealing, Counterclaimants have been damaged, including without limitation being

16  forced to settle the *Liu* and *Page* Actions without participation from First Mercury or contribution

17  from the First Mercury policy for which Counterclaimants paid substantial premium.  Additionally,

18  Counterclaimants have sustained and will continue to sustain attorney's fees and costs in this

19  coverage action against First Mercury.

20       82.     In breaching the implied covenant of good faith and fair dealing, First Mercury has

21  acted in a manner knowingly harmful to and/or in conscious disregard of the rights of

22  Counterclaimants, reflecting malice and/or oppression as defined in California Civil Code Section

23  3294, and with deliberate intent to vex, injure, and annoy Counterclaimants so as to deprive it of its

24  rights under the First Mercury policy.  Such conduct warrants the imposition of punitive and

25  exemplary damages in an amount sufficient to punish and make an example of Evanston in order to

26  deter such conduct in the future.

27  / / /

28  / / /

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## SEVENTH CLAIM FOR RELIEF – DECLARATORY JUDGMENT AGAINST FIRST MERCURY

83.     Counterclaimants hereby incorporate by reference the above paragraphs 1 through 82 as if fully set forth herein.

84.     Counterclaimants seek a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, of the respective rights and obligations of Counterclaimants and First Mercury under the First Mercury policy.

85.     An actual case and controversy of a justiciable nature exists between Counterclaimants and First Mercury involving their respective rights and liabilities under the First Mercury policy, and dependent on the construction of the First Mercury policy, which controversy may be determined by declaratory judgment.

86.     Pursuant to the terms and conditions of the First Mercury policy, First Mercury is obligated to provide excess coverage up to its policy limits for the *Liu* and *Page* Actions in excess of the limits of applicable underlying insurance.

87.     Counterclaimants paid to First Mercury all premiums due under the First Mercury policy and gave timely notice of the *Liu* and *Page* Actions to First Mercury.  Counterclaimants have otherwise substantially complied with all terms, provisions, and conditions of the policy.  To the extent Counterclaimants have not satisfied a condition precedent to coverage, First Mercury, by its conduct, has either waived or should be estopped from asserting any such conditions.

88.     No exclusions or limitations in the First Mercury policy are applicable to the *Liu* and *Page* Actions.  Therefore, First Mercury must provide complete coverage for any settlement or judgment against Counterclaimants in the *Liu* and *Page* Actions that exceeds the limits of applicable underlying insurance.

### PRAYER FOR RELIEF

WHEREFORE, Counterclaimants pray that the Court enter judgment against Evanston and First Mercury as follows:

WITH RESPECT TO THE FIRST CLAIM FOR RELIEF:

1.     The amount of any settlement or judgment in the *Liu* and *Page* Actions in excess of

1   the applicable underlying limits and within the limits of the Evanston policy;

2       2.      pre-judgment and post-judgment interest;

3       3.      attorneys fees and costs;

4       4.      all other costs of the suit herein;

5       5.      other compensatory damages in an amount to be proven at trial;

6   WITH RESPECT TO THE SECOND CLAIM FOR RELIEF:

7       6.      all of the above requested relief, and additional punitive or exemplary damages in an

8   amount to be determined at trial;

9       7.      such other and further relief as the Court may deem just and proper;

10  WITH RESPECT TO THE THIRD CLAIM FOR RELIEF:

11      8.      a declaration that Evanston must indemnify Counterclaimants for losses relating to

12  the *Liu* and *Page* Actions in excess of applicable limits of the underlying insurance;

13  WITH RESPECT TO THE FOURTH CLAIM FOR RELIEF:

14      9.      reformation of the Evanston policy to reflect the true agreement of Counterclaimants

15  and Evanston;

16  WITH RESPECT TO THE FIFTH CLAIM FOR RELIEF:

17      10.     the amount of any settlement in the *Liu* and *Page* Actions in excess of the applicable

18  underlying limits and within the limits of the First Mercury policy;

19      11.     pre-judgment and post-judgment interest;

20      12.     attorneys fees and costs;

21      13.     all other costs of the suit herein;

22      14.     other compensatory damages in an amount to be proven at trial;

23  WITH RESPECT TO THE SIXTH CLAIM FOR RELIEF:

24      15.     all of the above requested relief, and additional punitive or exemplary damages in an

25  amount to be determined at trial;

26      16.     such other and further relief as the Court may deem just and proper;

27  WITH RESPECT TO THE SEVENTH CLAIM FOR RELIEF:

28      17.     a declaration that First Mercury must indemnify Counterclaimants for losses relating

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

ANSWER TO COMPLAINT; COUNTERCLAIM; DEMAND FOR JURY TRIAL

to the *Liu* and *Page* Actions in excess of applicable limits of the underlying insurance.

## **DEMAND FOR JURY TRIAL**

Counterclaimants demand a trial by jury of any and all issues so triable.


DATED:  September 23, 2015


REED SMITH LLP


By: / s / David E. Weiss
    David E. Weiss
    Cristina M. Shea
    Melissa A. Meth
    Rebecca L. Gindi
    Attorneys for Defendant and Counterclaimant Uber
    Technologies, Inc., and Counterclaimants Rasier
    LLC and Rasier-CA LLC