IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANSTON INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>  v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>    Defendant.<br>_____<br>UBER TECHNOLOGIES, INC., RAISER LLC, RAISER-CA LLC,<br><br>    Counterclaimants,<br><br>  v.<br><br>EVANSTON INSURANCE COMPANY, FIRST MERCURY INSURANCE COMPANY,<br><br>    Counterdefendants.<br>_____ / | No. C 15-03988 WHA<br><br>**ORDER DENYING MOTION TO DISMISS COUNTERCLAIMS** |

**INTRODUCTION**

In this insurance action, counterdefendant insurance company moves to dismiss counterclaims against it. For the reasons stated herein, the insurance company's motion to dismiss is **DENIED**.

**STATEMENT**

This case surrounds two car accidents during which drivers were allegedly logged on to the Uber Technologies transportation application. In the first accident, an Uber driver struck three pedestrians in December 2013, killing one (the *Liu* action). In the second, a DeSoto taxi

1  cab, in which the driver had been logged on to the Uber application, struck a pedestrian in
2  September 2013 (the *Page* action).  The victims in both accidents brought suit in state court
3  against Uber and Raiser LLC, Uber's wholly owned subsidiary, who tendered the claims to their
4  insurers (Countercl. ¶¶ 26–34).

5  Before these two accidents, Uber purchased three layers of insurance effective from April
6  2013 to April 2014:  (1) two primary policies from National Union Fire Insurance Company (not
7  a party herein), a commercial general liability policy (with a one million dollar per occurrence
8  limit and two million dollar aggregate limit) and a business auto policy (with a one million dollar
9  total limit); (2) an excess policy from counterdefendant Evanston Insurance Company (with a
10 five million dollar total limit), which followed form and sat on top of both the National Union
11 general commercial and business auto policies; and (3) a third-layer excess policy from
12 counterdefendant First Mercury Insurance Company.  Essentially, the first layer of insurance
13 consisted of two separate polices, a general commercial and a business auto policy, both issued
14 by National Union.  The Evanston policy, at issue in this motion, constituted an excess layer that
15 sat on top of both National Union policies (Countercl. ¶¶ 17, 19–23).

16 National Union, the primary-layer insurer, accepted coverage for the accidents under the
17 business auto policy.  The two excess-layer insurers, Evanston and First Mercury, denied
18 coverage.  Evanston then commenced this federal action seeking a declaration that it had no duty
19 to provide Uber with coverage in the underlying state actions.  Uber, along with its subsidiary
20 Raiser, filed counterclaims against Evanston and First Mercury, alleging claims for breach of
21 contract, breach of the implied covenant of good faith and fair dealing, declaratory relief, and
22 reformation.[*]

---

[*] The Court appreciates that the caption of this case appears abnormal due to Raiser's sudden appearance in the case as a counterclaimant, that is, Raiser was not named as a defendant in the complaint. Raiser's joinder as a counterclaimant will be treated as proper under Rule 20 unless a written objection is made within seven calendar days of this order.  Similarly, First Mercury suddenly found itself as a "counterdefendant" even though it had not made claims herein or even been in the case.  Nevertheless, it will be treated as a proper defendant on the counterclaim unless a written objection is made within seven calendar days of this order.

2

Now, Evanston moves to dismiss Raiser as a counterclaimaint and moves to dismiss Uber's claim for bad faith. First Mercury answered the counterclaims and did not file a motion to dismiss. This order follows full briefing and oral argument.

**ANALYSIS**

To survive a motion to dismiss, a complaint must state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Moreover, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotations omitted).

**1.  EVANSTON'S MOTION TO DISMISS RAISER AS A COUNTERCLAIMANT.**

Evanston argues that Raiser lacks standing to sue because it is not a named insured under the Evanston policy. The National Union business auto policy in excess to which the Evanston policy sits, however, contains a "Broad Form Named Insured" endorsement, which states that named insureds include (Dkt. No. 1-6 at 35):

> any subsidiary, associated, affiliated, allied or acquired company or corporation (including subsidiaries thereof) of which any insured named as the Named Insured on the Declarations Page has more than 50% ownership interest in or exercises management or financial control over at the inception date of this policy, provided such subsidiary, associated, affiliated, allied or acquired company or corporation and their operations have been declared to us prior to the inception date of this policy.

Uber has alleged that Raiser is its wholly owned subsidiary. Moreover, the Evanston policy states that except where otherwise indicated, it "shall follow the Insuring Agreements, Definitions, Conditions, and Exclusions of the Controlling Underlying Insurance Policy as shown in Item 4 of the Declarations" (Compl. ¶ 12, Ex. D, Dkt. 1-4 at 7). Item 4 of the declarations includes the National Union business auto policy. Thus, based on the business auto policy's inclusion of Uber's subsidiaries, which the Evanston policy incorporates and sits in excess to, Raiser is covered under the Evanston policy.

Evanston makes two arguments to support its contention that Raiser lacks standing. *First*, while Evanston acknowledges that the National Union business auto policy extends to

3

1 Uber's subsidiaries, it notes that the National Union general commercial policy (the other policy
2 above which Evanston's policy sits), explicitly excludes Raiser as a named insured (Mot. at 3).
3 This fact, however, is irrelevant. Both the *Liu* and *Page* actions involved car accidents and arose
4 under National Union's business auto policy, which includes Uber's subsidiaries. The Evanston
5 policy sits in excess to and explicitly incorporates that business auto policy. Thus, the exclusion
6 of Raiser in the separate commercial liability policy does not apply to the business auto policy or
7 to the present dispute.

8 At the hearing, Evanston's counsel continued to make this argument. At the Court's
9 insistence, Uber and Raiser's counsel, Attorney Cristina Shea, drew a large diagram displaying
10 the structure of Evanston's excess insurance policy. The diagram, which Evanston agreed was
11 accurate, showed that the Evanston policy sat on top of two National Union polices, one that
12 explicitly excluded Raiser (the general commercial policy) and one that did not (the business
13 auto policy). Despite the diagram's clear demonstration that the Evanston policy sat in excess to
14 a policy that did not exclude Raiser, Evanston's counsel continued to press the ridiculous
15 argument that the irrelevant general commercial policy's exclusion somehow applied to
16 Evanston's excess coverage of the business auto policy. A photograph of the diagram drawn by
17 Attorney Shea and the actual diagram will be maintained by the Clerk. At trial, the jury will be
18 shown the diagram and will be advised that Evanston made this clearly erroneous argument in
19 earlier proceedings.

20 *Second*, Evanston relies on "Change Number 4" to its policy with Uber, which explicitly
21 excluded Raiser as a named insured for all purposes (RJN Exh. D at 37). Evanston also moves
22 for judicial notice of this policy change. Uber, however, objects to judicial notice of "Change
23 Number 4," contending that it was added to the policy after the underlying car accidents took
24 place, and thus does not apply to the instant action. "Change Number 4" states that it had an
25 effective date of April 19, 2013 and thus seemingly ended coverage for Raiser *before* the
26 accidents. Uber, however, disputes the accuracy of that effective date and asserts that discovery
27 will show that the parties never agreed to "Change Number 4." Moreover, Uber points out that
28

4

1  "Change Number 4" followed "Change Number 3," which had an effective date of April 19,
2  2014, indicating that the 2013 date for "Change Number 4" is inaccurate.

3   Under FRE 201(b) a court may judicially notice a fact that is not subject to reasonable
4  dispute because it can be accurately and readily determined from sources whose accuracy cannot
5  be reasonably questioned. Here, based on the parties' representations, the effective date of
6  "Change Number 4" is subject to reasonable dispute. Discovery will be allowed to sort this out.
7  Thus, Evanston's request for judicial of Exhibit D (which encompasses "Change Number 4") is
8  **DENIED**, and will not be considered for the present motion. Evanston's other requests for
9  judicial notice (of the complaint and counterclaims) are already part of the record in this case and
10 thus need not be judicially noticed.

### 2. UBER AND RAISER'S BAD FAITH CLAIMS.

12  Evanston also moves to dismiss Uber and Raiser's counterclaims for violations of the
13 implied covenant of good faith and fair dealing. To establish a breach of this covenant, an
14 insured must show (1) benefits due under the policy have been withheld, and (2) the reason for
15 withholding benefits must have been unreasonable or without proper cause. *Love v. Fire Ins.*
16 *Exch.*, 221 Cal. App. 3d 1136, 1151 (1990). Uber and Raiser's counterclaims assert that
17 Evanston denied coverage under its excess insurance policy in bad faith. Specifically, the claims
18 allege that there is clear coverage for the *Liu* and *Page* actions under the policy and that in its
19 responses to requests for coverage, Evanston "ignor[ed] the fact that both the *Liu* Action and
20 *Page* Action involve allegations regarding use of the Uber App, and the *Liu* Action specifically
21 contains products liability causes of action." Uber and Raiser further allege that "Evanston's
22 interpretation of its policy renders its auto coverage illusory" (Countercl. ¶¶ 36, 38–39). These
23 allegations are sufficient at the Rule 12 stage to state a plausible claim that Evanston violated the
24 implied covenant of good faith and fair dealing in unreasonably denying Uber and Raiser's
25 insurance claims.

26  Evanston makes two main arguments in support of its contention that Uber and Raiser's
27 bad faith claims should be dismissed. *First*, Evanston argues that the written terms of its policy
28 preclude coverage as a matter of law. Specifically, Evanston argues that coverage for the car

accidents is precluded by two limitations in the Evanston policy: (1) the designated premises limitation; and (2) the auto liability limitation. The designated premises limitation states that the policy only applies to losses arising out of operations in twelve office building locations. The auto liability limitation excludes coverage for any loss resulting from automobile use away from Uber's office buildings. Evanston essentially contends that because the *Liu* and *Page* auto accidents did not occur in a designated premise, such as "800 Market Street, 7th Floor" or "405 Howard Street, 5th Floor," then there is no coverage as a matter of law.

Evanston's reading of these two limitations misinterprets the structure of its excess insurance coverage. As detailed above, Evanston's excess policy sits above the two separate National Union policies, the general commercial and business auto policies. While at the Rule 12 stage it is reasonable to assume the designated premises and auto liability limitations apply to the general commercial policy, it seems unreasonable to read them as applying to the business auto policy. Under Evanston's interpretation, the business auto policy would only apply to car accidents occurring in the hallways of Uber office buildings. This would be absurd and inconsistent with the California Supreme Court's directive that "contracts are to be interpreted in a manner that makes them reasonable and capable of being carried into effect, and that is consistent with the parties' intent." *Safeco Ins. Co. of Am. v. Robert S.*, 26 Cal. 4th 758, 765 (2001).

Discovery will be allowed into the files of Evanston to determine the extent to which those files contradict this (and other) proposed interpretations or contradictions that may also bear on the claim of bad faith denial of coverage.

*Second*, Evanston argues that because Uber and Raiser have pled a claim for reformation, they have somehow forfeited their right to allege a bad faith claim in the alternative. Not so. Rule 8(d)(3) clearly provides "a party may state as many separate claims or defenses as it has, regardless of consistency." Uber and Raiser's counterclaims regarding reformation explicitly state: "In the alternative, in the event the Evanston policy is found not to provide coverage for the *Liu* and *Page* Actions in its current form, the Evanston policy should be reformed to reflect the agreement of the parties regarding the scope of coverage" (Countercl. ¶ 67). This

counterclaim seeks to reform the insurance contract to reflect the parties' agreement that "the Evanston policy would limit coverage only for owned automobiles and there would be no limitation for non-owned vehicles or for accidents occurring away from Uber's premises" (*id*. at ¶ 68). The fact that Uber and Raiser have pled a reformation claim in the alternative does not mean that they have conceded that there is no coverage under the policy as written.

In support of its argument, Evanston primarily relies on the California Court of Appeal's decision in *R&B Auto Center, Inc. v. Farmers Group, Inc.*, 140 Cal. App. 4th 327 (2006). There, however, the insured conceded that the policy did not provide coverage as written and could only succeed if its reformation claim was granted. Thus, *R&B* held that even if the insurance contract were to be reformed, the insurer could not "be deemed to have acted in bad faith retroactively" because the policy terms as written did not dictate coverage. *Id*. at 354.

The other two federal district court decisions Evanston relies on are similarly inapposite — *O'Keefe v. Allstate Indem. Co.*, 953 F.Supp.2d 1111 (S.D. Cal. 2013) (Judge Jeffrey Miller), and *Gasnik v. State Farm Ins. Co.*, 825 F.Supp. 245 (E.D. Cal. 1992) (Judge Robert Coyle). In both cases, the insureds conceded that the coverage sought did not arise from the specific terms of the written policy. Rather, the insureds argued that the policies should be reformed to include coverage. Here, in contrast and as discussed above, Uber and Raiser have pled a plausible claim for bad faith denial of coverage based on the written terms themselves, whether or not the policy is reformed. Thus, Uber and Raiser's bad faith claims are sufficient to survive the Rule 12 stage. Moreover, if an insurer knows good and well that the parties intended coverage and that the insurer or its agents mistakenly misstated the extent of coverage, then it might well be bad faith for the insurer to hide behind the "error" as a basis for denying coverage.

## CONCLUSION

For the reasons stated above, Evanston's motion to dismiss Raiser's claims for lack of standing and to dismiss Uber and Raiser's bad faith claims is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 14, 2015.

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE

7